## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## BRIDGEPORT DIVISION

-----------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| HO WAN KWOK, *et al.*,[1] | : | Case No. 22-50073 (JAM) |
| Debtor. | : | (Jointly Administered) |

-----------------------------------------------------x

|  |  |  |
|---|---|---|
| HK International Funds Investments (USA) Limited, LLC | : | |
| Plaintiff | : | Adv. Proceeding No. 22-05003 |
| v. | : | |
| Ho Wan Kwok | : | |
| Defendant | : | |

-----------------------------------------------------x

|  |  |
|---|---|
| Chapter 11 Trustee Luc A. Despins | : |
| Counter-Plaintiff | : |
| v. | : |
| HK International Funds Investments (USA) Limited, LLC, and Mei Guo | : |
| Counter-Defendants. | : |

-----------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK FOR PARTIAL
## SUMMARY JUDGMENT ON FIRST COUNTERCLAIM

---

[1] The Debtors in these chapter 11 cases are Ho Wan Kwok (also known as Guo Wengui, Miles Guo, and Miles Kwok, as well as numerous other aliases) (last four digits of tax identification number: 9595), Genever Holdings LLC (last four digits of tax identification number: 8202) and Genever Holdings Corporation. The mailing address for the Trustee, Genever Holdings LLC, and the Genever Holdings Corporation is Paul Hastings LLP, 200 Park Avenue, New York, NY 10166 c/o Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok (solely for purposes of notices and communications).

## <u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT BACKGROUND ................................................................................................2

    A.  PAX's Claim and Litigation Against Debtor.....................................................................2

    B.  Violation of State Court Restraining Order and Contempt Order ......................................4

    C.  Failure to Return Lady May and Subsequent Contempt Fines ...........................................5

    D.  Final Contempt Hearing and Participation by HK USA......................................................7

    E.  Chapter 11 Case and Lady May Adversary Proceeding ...................................................10

ARGUMENT ...........................................................................................................................11

    A.  Legal Standard for Summary Judgment ..........................................................................11

    B.  Collateral Estoppel Applies to Counterclaims .................................................................12

         i.  Identical Issues Decided in State Court Litigation…...............................................12

        ii. HK USA Had Full and Fair Opportunity to Litigate in State Court……….............13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AMC Invs., LLC,*
   524 B.R. 62 (Bankr. D. Del. 2015) ........................................................................13

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)..............................................................................................11

*Carol v. Madison Plaza Apartment Corp.,*
   No. 156730/13, 2014 WL 6471482 (N.Y. Sup. Ct. Nov. 18, 2014).......................14

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)..............................................................................................11

*Coleman v. J.P. Morgan Chase Bank N.A.,*
   136 N.Y.S.3d 911 (App. Div. 2nd Dept. 2021), *appeal dismissed,* 175 N.E.3d
   923 (2021)............................................................................................................12

*In re Finley, Kumble, Wagner, Heine,*
   *Underberg, Manley, Myerson & Casey,*
   192 B.R. 342 (Bankr. S.D.N.Y. 1994)..................................................................11

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC,*
   742 F. Supp. 2d 446 (S.D.N.Y. 2010)..................................................................11

*Harlem Bus. Ctr. v. Rothenberg,*
   205 N.Y.S. 353 (App. Term 1924) .......................................................................16

*Juan C. v. Cortines,*
   89 N.Y.2d 659 (1997)...........................................................................................14

*Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.,*
   967 A.2d 1 (Conn. 2009) ......................................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986)..............................................................................................11

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC,*
   988 F.3d 634 (2d Cir. 2021)..................................................................................12

*Pope v. Enzo Biochem, Inc.,*
   432 F. App'x 7 (2d Cir. 2011) ..............................................................................14

*Revital Realty Grp., LLC v. Kalmon Dolgin Affiliates, Inc.*,
    981 N.Y.S.2d 638 (N.Y. Sup. Ct. 2013) ........................................................... 13-14

*Stockton v. Lansiquot*,
    838 F.2d 1545 (11th Cir. 1988) .............................................................................16

*Universal Furniture Int'l, Inc. v. Frankel*,
    538 F. App'x 267 (4th Cir. 2013) .........................................................................14

**Statutes**

11 U.S.C.
    § 541.......................................................................................................................10
    § 542.......................................................................................................................10

New York's Judiciary Law § 753 ...................................................................................7

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 56 ..................................................................................................................11

Federal Rules of Bankruptcy Procedure
    Rule 7001 .........................................................................................................1, 11
    Rule 7056 .........................................................................................................1, 11

Local Bankruptcy Rule 7056-1 .......................................................................................1

Pursuant to Federal Rule of Bankruptcy Procedure 7056 and Rule 7056-1 of the Local Bankruptcy Rules for the District of Connecticut, Luc A. Despins, as chapter 11 trustee (the "Trustee" or "Counter-Plaintiff") for the estate of Ho Wan Kwok (the "Debtor") respectfully submits this memorandum of law in support of his motion for partial summary judgment (the "Motion") on the First Counterclaim in the *Chapter 11 Trustee's Answer and Counterclaims* (the "Answer and Counterclaims") [Adv. Proc. ECF No. 36].  In support of the Motion, the Trustee submits the *Declaration of Nicholas A. Bassett* (the "Declaration"), filed concurrently herewith, and the *Local Rule 56(a)1 Statement of Undisputed Material Facts* ("SUF"), also filed concurrently herewith.

## **PRELIMINARY STATEMENT**[1]

1.      The Trustee's First Counterclaim seeks a declaratory judgment that the Lady May is property of the estate based on collateral estoppel arising from the extensive participation of Mei Guo (the "Debtor's Daughter") and HK International Funds Investments (USA) Limited, LLC ("HK USA," and together with Mei Guo, the "Counter-Defendants" or "Plaintiffs") alongside the Debtor in the State Court litigation (the "NY Action") brought by Pacific Alliance Asia Opportunity Fund L.P. ("PAX").  In the NY Action, Justice Ostrager found, based on "clear[] and convincing[]" evidence, including the testimony of the Debtor's Daughter, who claimed she owned HK USA, that the Debtor "beneficially owns and controls" the Lady May.  This ***same issue*** is now pending before this Court pursuant to the First Counterclaim, and collateral estoppel prevents the Counter-Defendants from re-litigating the issue.  Because no genuine dispute of material fact exists

---

[1]    Capitalized terms not defined in the Preliminary Statement have the meanings given to such terms in the sections that follow.

concerning the application of collateral estoppel in this situation, the Trustee is entitled to summary judgment in his favor on the First Counterclaim.[2]

## RELEVANT BACKGROUND

### A.    PAX's Litigation Against Debtor and Entry of Restraining Order

2.      On April 18, 2017, PAX filed a complaint against the Debtor before Justice Ostrager in the State Court in connection with amounts allegedly owing by the Debtor to PAX under the Debtor's guaranty of a loan PAX made to one of the Debtor's business entities in 2008. SUF, ¶ 6.

3.      On September 15, 2020, PAX prevailed on its motion seeking summary judgment on its breach of contract claim against the Debtor.  SUF, ¶ 7.  On February 3, 2021, the State Court entered an order awarding PAX a judgment in connection with its breach of contract claim in the amount of $116,402,019.57 (the "PAX Judgment").  SUF, ¶ 8.

4.      On September 25, 2020, PAX filed a motion in the State Court seeking a restraining order pursuant to New York Civil Practice Law & Rule ("CPLR") 5229, alleging, among other things, that the Debtor would "take steps to dissipate his assets or otherwise frustrate the judgment in this case" (the "CPLR Motion"). SUF, ¶ 9.

5.      On September 30, 2020, the State Court entered a temporary restraining order restraining the Debtor from, among other things, "making or causing any sale, assignment, transfer, or interference with any property in which he has an interest."  SUF, ¶ 10.

---

[2]     Count One of the *Complaint for Declaratory Relief* (the "Complaint") [Adv. Proc. ECF No. 1], seeks a declaratory judgment that HK USA is the owner of the Lady May and the Debtor has no interests in the Lady May.  Should the Court grant this Motion, the Trustee would necessarily also prevail on Count One of the Complaint.

6.    On October 15, 2020, the State Court held a hearing with respect to PAX's CPLR Motion and the Debtor's opposition thereto.  SUF, ¶ 11.  At the hearing, Justice Ostrager stated, among other things, in comments directed at the Debtor and his counsel:

a) "The Court believes . . . that Mr. Kwok has attempted to mislead the Court. The Court believes that Mr. Kwok is, as the plaintiff contends, playing a shell game with his assets, and has violated if not the letter of court orders, the spirit of court orders."[3]

b) "[W]e are not going to have any more shell games. Wherever these assets are held, they are going to remain held where they presently reside, and if it's determined that the entities that are presently listed as the owners of the assets are the alter ego of Mr. Kwok or are wholly dominated and controlled by Mr. Kwok, those assets will be made available to satisfy any judgment that the plaintiff recovers."[4]

c) "The intent here which is very clear and specific is that in this 2017 case in which there's been a great deal of gamesmanship, a great deal of dissembling, and some flagrant disregard of court orders, I want to know if any transaction is going to take place in which Mr. Kwok is the guiding hand that's something other than an ordinary course of business transaction."[5]

d) "[O]rders of the Court are either flaunted or exceedingly liberally interpreted, and . . . intentional or unintentional misstatements that have misled the Court have been made to the Court."[6]

7.    On the same day, October 15, 2020, the State Court entered an order (the "October 2020 Restraining Order") providing that the Debtor "*and/or the registered owners of* (1) the Residence at the Sherry Netherland Hotel and (2) *the yacht, 'the Lady May'* are restrained from making or causing any sale, assignment, transfer, or interference with those assets."  SUF, ¶ 13 (emphasis added).

8.    HK USA is nominally the registered owner of the Lady May.  SUF, ¶ 14.

---

[3]    SUF, ¶ 12(a).
[4]    SUF, ¶ 12(b).
[5]    SUF, ¶ 12(c).
[6]    SUF, ¶ 12(d).

**B.**     **Violation of State Court Restraining Order and Contempt Order**

9.     On November 18, 2020, in a letter filed with the State Court, counsel for PAX

reported the following information with respect to the Lady May:

> Based on publicly available information, which we accessed at
> MarineTraffic.com . . . we understand that the yacht departed Fort
> Lauderdale, Florida, on November 1, 2020, and, as of today, is
> located in the Bahamas at or near Old Fort Bay, Nassau. In fact, it
> appears that the yacht was already out of the jurisdiction on
> November 12, 2020, when Mr. Siegal (presumably carrying out Mr.
> Kwok's instructions) asked Justice Ostrager if Mr. Kwok could send
> the yacht out of the jurisdiction. This is particularly concerning
> given Mr. Kwok's history of making misrepresentations throughout
> this litigation.[7]

10.     On December 24, 2020, PAX filed a motion seeking that the Debtor be held in

contempt based on the Lady May having left the jurisdiction.  SUF, ¶ 16.

11.     On March 17, 2021, the State Court issued a decision and order holding the Debtor

in contempt (the "March 2021 Contempt Order") and stating, among other things, the following:

> The Court has reviewed the extensive submissions of the parties in
> connection with PAX's motion to hold Kwok in contempt. Passing
> the issue of whether any of Mr. Kwok's attorneys have violated the
> Code of Professional Conduct, it is clear that there has been an
> intolerable amount of gamesmanship, dissembling, and deceit in
> proceedings before this Court relating to the whereabouts and
> ownership of the yacht "Lady May.".
>
> The defendant claims that the yacht was removed from the
> jurisdiction of this Court for "ordinary course" "winter
> maintenance" notwithstanding restraints imposed on the movement
> of the yacht by the Court. Rather than catalogue the many "shell
> games" defendant Kwok has engaged in with the assistance of
> counsel who should know better, the Court grants the motion for
> contempt to the following extent: For every day that the yacht is
> outside the jurisdiction of this Court after May 15, 2021, defendant
> Kwok will be fined $500,000. The other restraints relating to the
> ownership and control of the yacht remain in place.[8]

---

[7]     SUF, ¶ 15.
[8]     SUF, ¶ 17.

4

C.    **Failure to Return Lady May and Subsequent Contempt Fines**

12.    On May 27, 2021, the State Court held a hearing in connection with PAX's efforts

to obtain documents in discovery from Golden Spring (New York) Ltd.  SUF, ¶ 18.  At that

hearing, Justice Ostrager made the following additional comments with respect to the Debtor and

his related entities:

> a) "Mr. Kwok is incurring $500,000 per day in contempt penalties. I understand that Mr. Kwok believes that these court proceedings are a game of evasion -- that he wants to play."[9]
>
> b) "Mr. Kwok has exhausted the Court's patience with his antics."[10]
>
> c) "Mr. Kwok leads a rather extravagant lifestyle, [yet] purports to have zero assets whatsoever."[11]
>
> d) "Mr. Kwok flaunts the Court's orders at will."[12]
>
> e) "Mr. Kwok has apparently no concern for the $500,000 a day sanction for flagrantly violating prior orders of the Court with respect to the boat that [Golden Spring] is paying to maintain and transport."[13]
>
> f) "[PAX's counsel] has been pursuing enforcement of a judgment for years now, and it's been my misfortune to have to have presided over these many, many, many motions and hearings, none of which are producing the results that the Court has ordered because Mr. Kwok directly or indirectly through his companies ignores Court orders."[14]

13.    On July 8, 2021, PAX filed a motion (the "Final Contempt Motion") in the State

Court seeking a final contempt order against the Debtor in connection with the ongoing violation

of the March 2021 Contempt Order.[15]

14.    On July 19, 2021, together with the filing of the Debtor's opposition to the Final

Contempt Motion (which opposed the motion on the basis that the Debtor did not own the Lady

---

[9]    SUF, ¶ 19(a).
[10]   SUF, ¶ 19(b).
[11]   SUF, ¶ 19(c).
[12]   SUF, ¶ 19(d).
[13]   SUF, ¶ 19(e).
[14]   SUF, ¶ 19(f).
[15]   SUF, ¶ 20.

May and sought a stay pending the appeal of the March 2021 Contempt Order), counsel to HK USA, attorney Lee Vartan, filed an "Affirmation" in opposition to the Final Contempt Motion (the "Vartan Affirmation").  SUF, ¶ 21.  The Vartan Affirmation asserted, among other things, that HK USA was the owner of the Lady May and that HK USA's "property interests are being affected by" the Final Contempt Motion.  SUF, ¶ 22.

15.     On July 21, 2021, the State Court held a preliminary hearing on the Final Contempt Motion, at which hearing Mr. Vartan appeared as counsel for HK USA, purportedly for the purpose of protecting HK USA's alleged property interest in the Lady May.  SUF, ¶ 23.  At the hearing, Justice Ostrager made the following comments, among others:

> a) "I don't believe that [PAX's counsel] has met -- met his burden on the record that's presently before the Court for a final court order of civil contempt, because there is an issue about the ownership of the ship, although it would seem that [PAX's counsel] has made more than a prima facie showing that all of these entities that allegedly control the ship are controlled by Mr. Kwok."[16]

> b) "Mr. Kwok is proceeding at his own peril by orchestrating the voyages of this ship to everywhere and anywhere other than the territorial waters of the United States."[17]

> c) "Let's be clear about – Let's be clear about one thing: The Court issued an order directing that the boat not be removed from the territorial waters of the United States, upon an application from representatives of Mr. Kwok, or entities that he controlled, to remove the boat from the territorial waters of the United States. That order was disregarded by Mr. Kwok and/or the entities that he controls. That is a contempt of the Court."[18]

> d) "If this wasn't gamesmanship and this wasn't flaunting of the Court's orders, and if this wasn't a transparent shell game that Mr. Kwok is engaged in, the boat would be in the territorial waters of the United States and we would resolve the issue of the boat's ownership."[19]

> e) "[PAX's counsel] has made more than a prima facie showing that Mr. Kwok controls all of these entities, over the course of multiple hearings, and that Mr. Kwok is in contempt, and his entities are in contempt of prior orders of the Court."[20]

---

[16]    SUF, ¶ 24(a).
[17]    SUF, ¶ 24(b).
[18]    SUF, ¶ 24(c).
[19]    SUF, ¶ 24(d).
[20]    SUF, ¶ 24(e).

f) "There can't be any dispute that Mr. Kwok and the entities he controlled were restrained from moving that boat from the territorial waters of the United States. And, in defiance of those orders and subsequent orders, the boat remains outside the territorial waters of the United States. And sooner or later the wheels of justice, which grind exceedingly slowly, will resolve the issue."[21]

16.    On November 9, 2021, the Supreme Court of the State of New York Appellate Division, First Judicial Department (the "Appellate Division"), issued an order on the Debtor's appeal of the March 2021 Contempt Order. The Appellate Division stated as follows:

> The motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiffs rights (see El-Dehdan v El-Dehdan, 26 NY3d 19, 29 [2015]; Judiciary Law S 753).[22]

The Appellate Division concluded by instructing Justice Ostrager "*to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties*." SUF, ¶ 27 (emphasis added).

### D.    Final Contempt Hearing and Participation by HK USA

17.    On February 2, 2022, the State Court held its final evidentiary hearing with respect to the Final Contempt Motion (the "Final Contempt Hearing"). SUF, ¶ 28. Mr. Vartan again appeared at the Final Contempt Hearing and acted as counsel to HK USA and also for the Debtor's Daughter. SUF, ¶ 29.

18.    At the beginning of the Final Contempt Hearing, Mr. Siegal, counsel for the Debtor, informed the court that "[t]he first several witnesses are witnesses for [HK USA], the owner of the vessel. And Lee Vartan will be presenting those witnesses for cross-examination." SUF, ¶ 30. Consistent with that explanation, Mr. Vartan proceeded to present four witnesses (all but one of

---

[21]    SUF, ¶ 24(f).
[22]    SUF, ¶ 26.

the witnesses offered on behalf of the defense) and make evidentiary objections in defending these witnesses before "turn[ing] things back over to Mr. Siegal" before the conclusion of the hearing. SUF, ¶ 31.

19.    In connection with the Final Contempt Hearing, the Debtor's Daughter testified—with Mr. Vartan representing her—that "she directed the Lady May's itinerary" and that "it was [her] decision for the boat to travel from New York to Florida in October 2020, not [her] father's decision."  SUF, ¶ 32.  According to the Debtor's Daughter: "I was aware . . . of the [March 2021 Contempt Order] requiring the Lady May to return to New York in May 2021. However, . . . I did not want the boat to travel to New York, and, after consulting with counsel, directed instead that it proceed to Europe . . . . that decision was mine alone, not my father's."  SUF, ¶ 33.

20.    On February 9, 2022, Justice Ostrager issued his Final Contempt Decision imposing a contempt fine against the Debtor of $134 million.  SUF, ¶ 34.  Justice Ostrager noted in his decision that the issue before him, at the direction of the Appellate Division, was whether the Debtor beneficially owned and controlled the Lady May.  SUF, ¶ 35 ("Pursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht.").

21.    The Final Contempt Decision resolved this question in the affirmative, determining finally and conclusively that the Debtor—and not HK USA, his daughter or anyone else—owns and controls the Lady May.  SUF, ¶ 36.  Justice Ostrager made numerous factual findings in support of this conclusion, including, among others:

    a) The Debtor had made "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members."[23]

---

[23]    SUF, ¶ 37(a).

8

b) The Debtor, "who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members."[24]

c) The Debtor's use of corporate entities to shield assets from creditors was a "scheme" that had "enabled Kwok to assert that he has no assets despite his lavish lifestyle."[25]

d) The Debtor "exercised dominion and control over" the Lady May.[26]

e) "The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process."[27]

f) Based on the evidence in connection with the purchase of the Lady May "a reasonable inference is that Kwok provided the funds which were used to purchase the yacht."[28]

g) "Subsequent to this Court's September 30, 2020 restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30, 2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady May be returned to the Court's jurisdiction."[29]

h) "The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case."[30]

i) "Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht."[31]

j) "The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May."[32]

22.    In his decision, Justice Ostrager specifically acknowledged the testimony presented

by the Debtor's Daughter and found that it had no credibility.  SUF, ¶ 37(h).  Specifically, the

---

[24]    SUF, ¶ 37(b).
[25]    SUF, ¶ 37(c).
[26]    SUF, ¶ 37(d).
[27]    SUF, ¶ 37(e).
[28]    SUF, ¶ 37(f).
[29]    SUF, ¶ 37(g).
[30]    SUF, ¶ 37(j).
[31]    SUF, ¶ 37(k).
[32]    SUF, ¶ 37(l).

Court stated that her testimony "that she owns and controls the Lady May ***cannot be credited in any respect***." *Id*. (emphasis added).  Justice Ostrager further noted that the Debtor's Daughter "***introduced no evidence that she exercised dominion and control of the Lady May, and provided no confirmation that she came into possession of the Lady May, other than as a ruse to shield the Lady May from being levied upon by her father's creditors.***"  SUF, ¶ 37(i) (emphasis added).

      E.      <u>**Chapter 11 Case and Lady May Adversary Proceeding**</u>

     23.     After the issuance of the Final Contempt Decision, on February 15, 2022 (the "<u>Petition Date</u>"), the Debtor commenced this Chapter 11 Case by filing his chapter 11 petition [Main Case Docket No. 1].  SUF, ¶ 38.

     24.     On April 11, 2022, HK USA initiated this adversary proceeding by filing a Complaint against the Debtor and PAX, asserting the same argument they raised previously in the State Court Action—*i.e.*, that HK USA is the owner of the Lady May.  [Adv. Proc. ECF No. 1]. *See also* SUF, ¶ 39.

     25.     On September 23, 2022, the Trustee filed his (a) *Answer and Counterclaims* [Adv. Proc. ECF No. 36] (the "<u>Answer and Counterclaims</u>") and (b) *Application for Prejudgment Remedy* [Adv. Proc. ECF No. 37] (the "<u>PJR Application</u>").  SUF, ¶ 40.  The Trustee's First Counterclaim seeks a ruling pursuant to 11 U.S.C. §§ 541 and 542 declaring that the Lady May is property of the Debtor's chapter 11 estate to be administered by the Trustee and ordering the surrender of the Lady May to the Trustee, all as a result of Justice Ostrager having already decided that the Debtor beneficially owns and controls the Lady May.  SUF, ¶ 41.

## ARGUMENT

### A.    Legal Standard

26.    Federal Rule of Civil Procedure 56 (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056) directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

27.    When the moving party's evidence demonstrates the absence of any genuine dispute of material fact, the burden shifts to the opposing party to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing FED. R. CIV. P. 56(e). To meet its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The mere existence of some alleged factual dispute will not defeat summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original).  There is a genuine dispute of material fact only if a reasonable trier of fact could decide in favor of the nonmoving party. *Id.* at 248.  Where there are no genuinely disputed issues of material fact, and the only disputes are ones relating to questions of law and the application of the law, summary judgment is appropriate. *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 192 B.R. 342, 349 (Bankr. S.D.N.Y. 1994).

28.    Because the Final Contempt Decision was issued by a New York state court, this Court should apply New York law on the question of whether collateral estoppel supports summary judgment in the Trustee's favor. *See Greenwich Life Settlements, Inc. v. ViaSource*

*Funding Grp., LLC*, 742 F. Supp. 2d 446, 452 (S.D.N.Y. 2010) ("To determine the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state.")

29.      Under New York law, the doctrine of collateral estoppel precludes a party from relitigating in a subsequent action an issue that was raised in a prior action and decided against that party or those in privity. *Coleman v. J.P. Morgan Chase Bank N.A.*, 136 N.Y.S.3d 911, 932 (App. Div. 2nd Dept. 2021), *appeal dismissed,* 175 N.E.3d 923 (2021).  Specifically, collateral estoppel bars relitigating an issue when: (1) the identical issue necessarily was decided in the prior action and is decisive of the present action and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action. *See Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 642 (2d Cir. 2021).

### B.      Collateral Estoppel Applies to First Counterclaim

30.      The Trustee is entitled to summary judgment on the First Counterclaim based on collateral estoppel because the undisputed facts demonstrate that (i) whether the Debtor owned and controlled the Lady May was the central question Justice Ostrager resolved in the Final Contempt Decision; (ii) the Counter-Defendants were in privity with the Debtor in the NY Action due to their close relationship and common legal and financial goals; and (iii) the Counter-Defendants (and their counsel) actively participated in the litigation that led to the Final Contempt Decision.

#### i.      *Identical Issues Decided in State Court Litigation*

31.      The first prong of the collateral estoppel analysis—whether identical issues were necessarily decided in the State Court litigation—addresses the question of which factual findings made by a prior court will be given preclusive effect. On this point, it has been ruled that issues are "necessarily determined" if they are an "essential element of a finding" and that "even factual

issues that are only implicitly relied upon in reaching a decision can be given preclusive effect. Similarly, factual issues are 'decisive' if they tend to establish a claim." *In re AMC Invs., LLC*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) (applying New York law).

32.    Here, collateral estoppel applies to Justice Ostrager's ultimate finding that the Lady May was beneficially owned and controlled by the Debtor and not by HK USA or the Debtor's Daughter.  This was the central question Justice Ostrager was asked to resolve by the Appellate Division, and he in fact decided the question when issuing his Final Contempt Decision. This finding is determinative here, where both the Trustee and the Counter-Defendants have asked this Court to decide the same question of the Lady May's ownership and control.

33.    Collateral estoppel also applies to Justice Ostrager's numerous other subsidiary factual findings, including his findings that the Debtor parked assets with shell companies and family members as part of the Debtor's scheme to "assert that he has no assets despite his lavish lifestyle."  SUF, ¶ 37(c).  These findings were among a number of other findings that Justice Ostrager relied upon to render his ruling, and they strongly support the Trustee's position here that the Debtor, and not his daughter or HK USA, owns the Lady May.[33]

> **ii.    *HK USA Had Full and Fair Opportunity to Litigate in State Court***

34.    Under New York Law, a nonparty to a prior action is considered to have had a full and fair opportunity to litigate and, thus, is subject to collateral estoppel when the nonparty is in privity with a party to the prior action. *See Revital Realty Grp., LLC v. Kalmon Dolgin Affiliates,*

---

[33]    The fact that an appeal of the Final Contempt Decision is pending is irrelevant for collateral estoppel purposes. *See Duverney v. State*, 410 N.Y.S.2d 237, 245 (Ct. Cl. 1978), *aff'd*, 429 N.Y.S.2d 70 (App. Div. 1980) ("the established rule in New York is that the pendency of an appeal does not affect the judgment's use as an estoppel"); *Bridgeview Garden Apts. v. N.Y. State Div. Hous. & Cmty. Renewal*, 8157/04, 2004 WL 2059552, at *6 (N.Y. Sup. Ct. Sept. 9, 2004) ("The rule in New York is clear that 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'").  Moreover, even if an appeal could prevent the application of collateral estoppel (it does not), here the Trustee, who has succeeded to the Debtor's rights in all litigation, controls the appeal and can resolve it how he sees fit.

*Inc.*, 981 N.Y.S.2d 638, 638 (N.Y. Sup. Ct. 2013) ("The principle of collateral estoppel 'precludes a party from relitigating in a subsequent action an issue clearly raised in a prior action and decided against that party or ***those in privity***.'") (internal references omitted) (emphasis added). Here, HK USA was in privity with the Debtor in the State Court litigation and, thus, is subject to collateral estoppel on the issue of ownership of the Lady May.

35.     "In the context of collateral estoppel, a party in privity is one that had 'a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation.'" *Id.* (quoting *Juan C. v. Cortines*, 89 N.Y.2d 659, 667 (1997)). The concept of privity for collateral estoppel purposes "requires a flexible analysis of the facts and circumstances of the actual relationship between the party and nonparty in the prior litigation," *Carol v. Madison Plaza Apartment Corp.*, No. 156730/13, 2014 WL 6471482, at *3 (N.Y. Sup. Ct. Nov. 18, 2014), and which revolves around the question of if a "nonparty's interests were adequately represented." *Pope v. Enzo Biochem, Inc.*, 432 F. App'x 7, 10 (2d Cir. 2011) (applying New York law).

36.     Courts have found parties to be in privity for the purposes of collateral estoppel in a variety of contexts where it is clear that the parties' interests were aligned, whether by dint of their common goals and/or their close legal, financial, or familial relationships. *See, e.g.*, *Coleman*, 136 N.Y.S.3d at 932 (affirming lower court's finding that a party was collaterally estopped from seeking quiet title to real property when "his interests [were] represented by his wife, who was a defendant in the prior foreclosure action.") (internal quotation marks omitted); *Universal Furniture Int'l, Inc. v. Frankel*, 538 F. App'x 267, 270-71 (4th Cir. 2013) (individual collaterally estopped from relitigating an issue that was resolved during the first trial by the company he co-

14

owned with his brother and business partner, because he was a co-owner and co-controller the company and had a substantial role in the prior suit).

37.    Here, it is clear from the record that the Debtor, HK USA, and the Debtor's Daughter were all in privity in the NY Action due to their close familial and business relationships and their common legal and financial goals.  This Court has already determined that the Debtor's Daughter is "deeply intertwined" with the Debtor.  SUF, ¶ 4.  The Counter-Defendants also admit that HK USA has no directors, officers, or employees; has no dedicated e-mail server or e-mail suffix; does not file tax returns; and has no bank account and is not otherwise capitalized. SUF, ¶ 2.[34]

38.    HK USA and the Debtor also had the same interests in the outcome of the NY Action.  Specifically, they both alleged and argued that the Lady May was owned and controlled by HK USA, not the Debtor.  *See, e.g.*, SUF, ¶¶ 22, 29-33.  The same is true now, with both the Debtor and HK USA seeking the same outcome in this Adversary Proceeding.  *See* Bassett Decl., Ex. 21, Aug. 1, 2022 Tr. 39:3-8 ("[The Debtor's] position is that HK [USA] owns the boat so [the Debtor and HK USA] are not adverse." He does not believe that he owns the boat. He does not believe that it's property of the bankruptcy estate. I'll say that unequivocally on the record. So I don't see how they can be adverse if they take the same position."). For these reasons, the Debtor and HK USA were in privity during the NY Action for collateral estoppel purposes.

39.    Even if HK USA was not formally in privity with the Debtor in connection with the NY Action, courts in numerous states have permitted the use of collateral estoppel against parties who, while not in privity with a party to prior litigation, were nonetheless bound by the

---

[34]    At no time since the Debtor's Daughter has allegedly owned the Lady May through HK International and/or HK USA has either entity ever held a bank account.  SUF, ¶ 5.

15

previous decision by dint of their appearance, and open and active participation, in the prior litigation. *See Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 967 A.2d 1, 18 (Conn. 2009) ("Both Connecticut and sister state case law in the area of collateral estoppel and res judicata make clear that . . . . It is not essential in the application of the doctrine of res [judicata] that a party to be bound by the former adjudication should have been a formal party thereto or privy to a formal party. It is sufficient if he, having an interest in the subject matter, participated openly and actively in so much of the former litigation as led to the judgment adjudicating the cause of action in question.") (internal quotation marks omitted); *Stockton v. Lansiquot*, 838 F.2d 1545, 1546 (11th Cir. 1988) ("It is well settled Florida law that even though a party in a subsequent suit was not a named party in a prior suit, such party is bound by the prior judgment if he participated in the first proceeding.") (internal quotation marks omitted); *Harlem Bus. Ctr. v. Rothenberg*, 205 N.Y.S. 353, 353 (App. Term 1924) ("The application of the doctrine of res adjudicata, beyond the immediate parties to the previous adjudication, prescribes that the third party must be either privy to, or have the right to control the conduct of, the litigation, or have been vouched in, or perhaps have taken some open and notoriously active part in the actual conduct of the litigation.").

40.    Here, there is no genuine factual dispute that HK USA—through its counsel and witnesses—openly and actively participated in the NY Action. HK USA made an appearance in the NY Action to oppose PAX's motion seeking the Final Contempt Decision on the grounds that HK USA's property interests were being affected by the motion. SUF, ¶ 22. HK USA then helped defend the Debtor at the evidentiary hearing regarding the ownership of the Lady May, presenting four of the five witnesses offered on behalf of the defense, including the Debtor's Daughter, the alleged owner of HK USA. SUF, ¶¶ 29-33. Moreover, HK USA's counsel and the Debtor's counsel in the NY Action were paid by the same Debtor-linked shell company, Golden Spring

(New York) Ltd. (and now, HK USA and the Debtor are represented by the same law firm in this chapter 11 case). *See* SUF, ¶ 29. For all of these reasons, HK USA is bound by the State Court's findings by virtue of having participated actively in that litigation, fully aligned with the interests of the Debtor.

[*Remainder of page intentionally left blank.*]

17

WHEREFORE, the Trustee respectfully requests that the Motion be granted and the

Court enter judgment against Counter-Defendants on the First Counterclaim.


Dated: March 19, 2023                          LUC A. DESPINS, CHAPTER 11 TRUSTEE
      New Haven, Connecticut


                                     By: */s/ Patrick R. Linsey*
                                         Douglas S. Skalka (ct00616)
                                         Patrick R. Linsey (ct29437)
                                         NEUBERT, PEPE & MONTEITH, P.C.
                                         195 Church Street, 13th Floor
                                         New Haven, Connecticut 06510
                                         (203) 781-2847
                                         dskalka@npmlaw.com
                                         plinsey@npmlaw.com

                                            *and*


                                         Nicholas A. Bassett (admitted *pro hac vice*)
                                         PAUL HASTINGS LLP
                                         2050 M Street NW
                                         Washington, D.C., 20036
                                         (202) 551-1902
                                         nicholasbassett@paulhastings.com

                                            *and*


                                         Avram E. Luft (admitted *pro hac vice*)
                                         G. Alexander Bongartz (admitted *pro hac vice*)
                                         PAUL HASTINGS LLP
                                         200 Park Avenue
                                         New York, New York 10166
                                         (212) 318-6079
                                         aviluft@paulhastings.com
                                         alexbongartz@paulhastings.com


                                         *Counsel for the Chapter 11 Trustee*

18