# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 22-50073 (JAM) |
| HO WAN KWOK, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, | ) ) | Adv. P. No. 22-05003 (JAM) |
| | ) | Re: ECF Nos. 1, 36, and 146. |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | ) ) | |
| | ) | |
| Counter-Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, and MEI GUO, | ) ) | |
| | ) | |
| Counter-Defendants. | ) | |
| | ) | |

## APPEARANCES

Luc A. Despins
Avram E. Luft
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglass S. Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counter-Plaintiff Luc A. Despins, Chapter 11 Trustee for the Estate of Ho Wan Kwok, and Counsel*

Lee Vartan
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052

    and

Aaron Romney
John L. Cesaroni
James M. Moriarty
Zeisler & Zeisler, P.C.
10 Middle Street
Bridgeport, CT 06604

Sam Della Fera, Jr.
Melissa F. Wernick (argued)
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068

*Counsel for Counter-Defendants HK International Funds Investments (USA) Limited, LLC, and Mei Guo*

**SUPPLEMENTAL MEMORANDUM OF DECISION IN SUPPORT OF
ORAL RULING GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

Julie A. Manning, United States Bankruptcy Judge

**I. INTRODUCTION**

    The Court issues this Supplemental Memorandum of Decision in support of its March 27, 2023, oral ruling granting the Motion for Partial Summary Judgment on First Counterclaim (ECF No. 146,[1] the "Motion for Summary Judgment") of Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual

---

[1] References to the docket in the instant adversary proceeding will be styled "ECF." References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (Bankr. D. Conn. 2022), will be styled "Main Case ECF."

Debtor") and the subsequently entered Order Granting Motion for Partial Summary Judgment (ECF No. 172, the "Summary Judgment Order"). The Trustee, the Defendant in the above-captioned adversary proceeding, filed several counterclaims against Plaintiff HK International Funds Investments (USA) Ltd., LLC ("HK USA") and Ms. Mei Guo, the Individual Debtor's daughter and the sole member of HK USA (together with HK USA, the "HK Parties"). (ECF No. 36, in pertinent part, the "Counterclaims.") Pursuant to 11 U.S.C. §§ 541 and 542, the Trustee's first counterclaim (the "First Counterclaim") seeks a declaratory judgment that the yacht named the Lady May is property of the Estate and an order requiring HK USA to deliver the Lady May to the Trustee. (*Id*. at ¶¶ 105–11.) For the reasons stated on the record and below, the Court granted the Motion for Summary Judgment.

## II.  BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022. (Main Case ECF No. 1.) The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases. (Main Case ECF Nos. 970, 1141.) For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

### *Main Case Proceedings Regarding the Lady May*

The subject of the instant adversary proceeding is the yacht known as the Lady May, which had been the subject of contention since before the Individual Debtor's Chapter 11 case was filed.

Less than two weeks after the Individual Debtor's Chapter 11 case was filed, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed a motion to either confirm inapplicability of the automatic stay or, alternatively, relief from the automatic stay.  (Main Case ECF No. 57, the "Stay Relief Motion").   In the Stay Relief Motion, PAX sought relief from the automatic stay to continue proceedings in the Supreme Court of New York in the case of *Pacific Alliance Asia Opportunity Fund, L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022) (the "New York Action").  (Main Case ECF No. 57.)  PAX sought to pursue the enforcement of prior rulings in the New York Action, including Justice Ostrager's contempt Decision & Order, *Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYCEF No. 1181 (the "Final Contempt Decision"), and to compel the return of the Lady May to New York's navigable waters.  (Main Case ECF No. 57.)

On April 11, 2022, HK USA appeared in the Individual Debtor's Chapter 11 case and opposed the Stay Relief Motion.  (Main Case ECF Nos. 201–03.)  In opposing the Stay Relief Motion, HK USA stated:

> 21. PAX claims that all it seeks by its Stay Relief Motion is the return of the Lady May through the enforcement of the Order of Civil Contempt entered on February 9, 2022, by the Supreme Court of the State of New York (Justice Ostrager presiding) (the "New York Action").  (Stay Relief Motion at 1-3.)  PAX represents that it does not seek the immediate payment of money by the Debtor through such enforcement or a levy upon the Lady May.  (*Id*. at 3 & 18.)

> 22. In response, *HK USA proposes that this Court enter—and HK USA consents to the entry of—an order compelling it to return the Lady May as set forth in the Proposed Order.*

(ECF No. 203 ¶¶ 21–23 (emphasis added).)  HK USA further stated:

> *By having this Court enter such an order, the parties involved avoid further protracted litigation concerning the contempt proceeding in the New York Action* and, most significantly, the imposition of penalties designed to coerce the Debtor's performance[2] which may severely prejudice the Debtor and the creditors in this bankruptcy case—such as would occur if the Debtor was incarcerated.

(*Id.* ¶ 28 (emphasis added).) Footnote 2 stated:

> Although Judge Ostrager held that the Debtor had the ability to control the Lady May, the Debtor continues to dispute this finding and that determination is the subject of an appeal. Entry of the Proposed Order avoids this controversy entirely because HK USA is the registered owner of the Lady May and the party who contracted directly with the Lady May's yacht management company, Yachtzoo.

(*Id.* ¶ 28 n. 2.) HK concluded by stating:

> *Finally, HK USA intends to commence an adversary proceeding against the Debtor and PAX before this Court in this bankruptcy case seeking a declaratory judgment determining that the Lady May is not property of the Debtor's bankruptcy estate. This Court has exclusive jurisdiction to make such determination.* Having this Court control the whereabouts of the Lady May while it hears whether the Lady May constitutes property of this bankruptcy estate avoids any inconsistencies and inefficiencies that may result from separate forums deciding each of these matters independently.

(*Id.* ¶ 31 (emphasis added).)

PAX, the Debtor, and HK USA resolved the Stay Relief Motion before a hearing was scheduled to be held. On April 29, 2022, the Court entered a stipulated order, which, *inter alia*, compelled HK USA to deliver the Lady May to the navigable waters of Connecticut on or before July 15, 2022. (Main Case ECF No. 299, the "Stipulated Delivery Order;" *see* Main Case ECF No. 318, at 97:4–103:15 (Attorney Kindseth appearing for HK USA and reporting to the court about the to-be-filed stipulation).) As part of the stipulation, HK USA placed $37 million into an escrow account (as subsequently drawn down in accordance with the Stipulated Delivery Order, further orders, and the escrow agreement, the "Escrowed Funds") to secure its delivery obligation. (Main Case ECF No. 299.) The Escrowed Funds can only be transferred upon the Court's order and/or completion of a certification process (the "Certification Process") set forth in the Stipulated Delivery Order. (*Id.*) The Stipulated Delivery Order required HK USA to "*maintain and pay for insurance in the limits and amounts that it has secured prior to the commencement of this case.*" (*Id.* ¶ 6 (emphasis added).).

On October 7, 2022, the Court entered a consent order establishing a $4 million repair reserve (the "Repair Reserve") for the Lady May (Main Case ECF No. 930, the "Repair Reserve Consent Order"), which was established from the Escrowed Funds.  (Main Case ECF No. 932). The Trustee holds the Repair Reserve in escrow, pending repair of the Lady May.  (Main Case ECF Nos. 930, 932.)  On December 9, 2022, the HK Parties moved to modify the Repair Reserve Consent Order to allow for payments of upkeep and personnel costs – *including insurance deductibles* (Main Case ECF No. 1216, the "HK Motion to Modify Repair Reserve.").  Before a hearing on the HK Motion to Modify Repair Reserve was scheduled, the Repair Reserve Consent Order had been twice modified through further consent orders to allow certain payments of upkeep and personnel costs from the Repair Reserve.  (Main Case ECF Nos. 1255, 1377.)  The HK Parties withdrew the Motion to Modify Repair Reserve on March 17, 2022, two days after the Individual Debtor was indicted in a criminal proceeding in the United States District Court for the Southern District of New York and six days before an evidentiary hearing was to be held. (Main Case ECF No. 1551.)

As the circumstances surrounding this adversary proceeding and the Individual Debtor's Chapter 11 case have continued to develop, the Trustee filed a Motion to Modify the Repair Reserve Consent Order seeking much of the same relief sought in the HK Motion to Modify Repair Reserve.  (Main Case ECF No. 1588, the "Trustee Motion to Modify Repair Reserve.") After orally granting the Motion for Summary Judgment, the Court orally granted the Trustee Motion to Modify Repair Reserve.  On March 28, 2023, the Court entered an order modifying the Repair Reserve Consent Order for a third time, incorporating the changes to the Order requested by the HK Parties.  (Main Case ECF No. 1608.)

***Instant Adversary Proceeding***

On April 11, 2022 – the day HK USA appeared in the Individual Debtor's Chapter 11 case, HK USA filed its complaint against PAX and the Individual Debtor, initiating the instant adversary proceeding.  (ECF No. 1, the "Complaint.")  The Complaint seeks a declaratory judgment that, as of the petition date, the Lady May was property of HK USA – not the Individual Debtor – and, therefore, is not property of the Estate.  The Complaint alleges that HK USA is not collaterally estopped from arguing that the Lady May is property of HK USA on the basis of the Final Contempt Decision.  (*Id.* at ¶¶ 29–38.)  HK USA alleged that this Court had exclusive jurisdiction to determine HK USA's interest in the Lady May.  (*Id.* at ¶ 38.)

On September 23, 2022, the Trustee, having stepped into the Individual Debtor's shoes as a defendant in this adversary proceeding, filed the Counterclaims.  (ECF No. 36.)  In pertinent part, the First Counterclaim alleges that HK USA is collaterally estopped from arguing that the Lady May is property of HK USA due to the Final Contempt Decision.

On October 4, 2022, a summons issued which included Ms. Guo as a counter-defendant.  (ECF No. 43.)  On December 22, 2023, the HK Parties filed a joint motion to dismiss, in part, the Counterclaims.  (ECF No. 87, the "Motion to Dismiss.")  Importantly, for present purposes, the Motion to Dismiss and the supporting documents seek dismissal of the second through fifth counterclaims, and do not seek dismissal of the First Counterclaim.

On March 15, 2023, an evidentiary hearing was held on the Trustee's Application for Pre-judgment Remedy (ECF No. 37, the "PJR Application") and Motion for Preliminary Injunction (ECF No. 50, the "PI Motion") seeking to enjoin the dissipation of assets.  Before the conclusion of the hearing, the HK Parties consented to entry of a pre-judgment remedy (ECF No. 140, the "PJR") and a preliminary injunction (ECF No. 142, the "PI," and together with the PJR,

collectively the "PI/PJR") in accordance with the relief sought in the Counterclaims.  Prior to the entry of the PI/PJR, the parties' arguments regarding the Counterclaims – including the First Counterclaim – had been fully briefed between September 23, 2022, and March 8, 2023, in anticipation of an evidentiary hearing, which was ultimately – after many adjournments – set to begin on March 15, 2023.  (Memorandum in Support of Application for Prejudgment Remedy, ECF No. 38, the "PJR Memo;" Combined Objection to Application for Prejudgment Remedy and Motion for Preliminary Objection, ECF No. 77, the "PI/PJR Objection;" Omnibus Reply in Support of (I) Application for Prejudgment Remedy and (II) Motion for Preliminary Injunction, ECF No. 101, the "PI/PJR Reply," and, together with the PJR Application, PJR Memo, PI Motion, PI/PJR Objection, collectively the "PI/PJR Pleadings.")

On March 19, 2023, the Trustee filed the Motion for Summary Judgment (ECF No. 146), a Memorandum of Law in Support of Motion for Partial Summary Judgment on First Counterclaim (ECF No. 147, the "SJ Memo"), and a Local Rule 56(a)(1) Statement of Undisputed Material Facts (ECF No. 148, the "56(a)(1) Statement").  On March 20, 2023, the Trustee filed a Declaration of Nicholas A. Bassett in support of the Motion for Summary Judgment.  (ECF No. 150, the "Bassett Declaration.")  On March 26, 2023, the HK Parties filed a Memorandum of Law in Response to Motion for Partial Summary Judgment (ECF No. 160, the "Objection"), a Local Rule 56(a)(2) Statement of Facts in Opposition to Motion for Partial Summary Judgment (ECF No. 162, the "56(a)(2) Statement," and together with the 56(a)(1) Statement, collectively the "Statements"), and the Declaration of Lee Vartan, Esq. in Opposition to Motion for Partial Summary Judgment (ECF No. 161, the "Vartan Declaration").  On March 27, 2023, the Trustee filed a Rebuttal Declaration of Nicholas A. Bassett.  (ECF No. 168, the

"Rebuttal Declaration," and, together with the Bassett Declaration and Vartan Declaration, collectively, the "Declarations.")

On March 20, 2023, the Trustee also filed a Motion to Expedite the hearing on the Motion for Summary Judgment.  (ECF No. 149, the "Motion to Expedite.")  The Trustee argued that the hearing on the Motion for Summary Judgment should occur on March 27, 2023 because: (i) the First Counterclaim had been extensively briefed in the PI/PJR Pleadings and the parties had been prepared for trial on March 15, 2023; (ii) the Trustee had cited no additional cases and made no additional arguments in the Motion for Summary Judgment that he had not already advanced in the PI/PJR Pleadings; and (iii) the HK Parties had informed the Trustee that certain insurance on the Lady May would expire on March 28, 2023 and the HK Parties had been unable to secure an extension of the existing insurance or replacement insurance.

On March 21, 2023, the Court held a hearing on the Motion to Expedite.  During the hearing, HK USA argued that (a) summary judgment should not be briefed and heard in the space of one (1) week; (b) there is no guarantee that the Trustee can insure the Lady May; and (c) HK USA had diligently tried to extend insurance on the Lady May but insurers would not do so because, *inter alia*, said insurers allegedly assert that the Individual Debtor is the ultimate beneficial owner of the Lady May.  HK USA conferred with the Trustee and asked to be given until 5:00 p.m. on March 22, 2023, to attempt to procure insurance, which request the Court granted.  Subsequently, on March 22, 2023, HK USA informed the Court and the Trustee that it had been unable to procure an extension of the existing insurance or replacement insurance.  The Court granted, therefore, the Motion to Expedite.  (ECF No. 153.)

A hearing on the Motion for Summary Judgment was held on March 27, 2023.  At the conclusion of the hearing, for the reasons stated on the record and further set forth below, the

Court issued its oral ruling granting the Motion for Summary Judgment.  Subsequently on March 27, 2023, the Court entered the Summary Judgment Order.  (ECF No. 172.)

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are statutorily core proceedings.  28 U.S.C. § 157(b)(2)(A), (C), (E), (H).  The First Counterclaim implicates no constitutional concerns precluding this Court's exercise of jurisdiction.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. UNDISPUTED FACTS

Based on the Statements, and upon review of the exhibits attached to the Declarations and the record in this adversary proceeding and the related Chapter 11 cases, the Court finds the following undisputed facts:[2]

1.  Counter-Defendant HK USA is a Delaware limited liability company.  (Complaint ¶ 1.)

---

[2] The Undisputed Facts are largely developed from the 56(a)(1) Statement, altered to reflect the concerns raised in the 56(a)(2) Statement and upon the Court's own review of the exhibits attached to the Declarations and the record in these Chapter 11 cases.  Many of the facts in opposition set forth in the 56(a)(2) Statement tend to either be immaterial or restatements of facts from the 56(a)(1) Statement reflective of the concerns the HK Parties raise, which concerns the Court has considered as stated above.  The Court has drawn from some of the facts in opposition where the Court finds they are material and not mere restatements of facts in the 56(a)(1) Statement.

2.  HK USA has no directors, officers, or employees; has no dedicated e-mail server or e-mail suffix; does not file tax returns; and has no bank account and is not otherwise capitalized. (Bassett Decl. Ex. 20.)

3.  Counter-Defendant Ms. Guo is HK USA's sole member and the Individual Debtor's Daughter.  (Complaint ¶ 3; Bassett Decl. Ex. 20.)

4.  At no time since Ms. Guo has allegedly owned the Lady May through HK International Funds Investments Limited ("HK International") and/or HK USA has either entity ever held a bank account.  (Complaint ¶ 24.)

5.  On April 18, 2017, Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed a complaint against the Individual Debtor in the Supreme Court of the State of New York, County of New York in connection with amounts allegedly owing by the Individual Debtor to PAX under the Individual Debtor's guaranty of a loan PAX made to one of the Debtor's business entities in 2008, initiating the above-mentioned New York Action.  (Bassett Decl. Ex. 1.)

6.  Neither HK USA nor Ms. Guo were a party to the New York Action.  (Vartan Decl. Exs. B & C.)

7.  On September 15, 2020, PAX prevailed on its motion seeking summary judgment on its breach of contract claim against the Individual Debtor.  (Bassett Decl. Ex. 2.)

8.   On February 3, 2021, the New York Court entered an order awarding PAX a judgment in connection with its breach of contract claim in the amount of $116,402,019.57 (the "PAX Judgment").  (*Id.* Ex. 3.)

9.  On September 25, 2020, PAX filed a motion in the New York Court seeking a restraining order pursuant to New York Civil Practice Law & Rule ("CPLR") 5229, alleging,

among other things, that the Individual Debtor would "take steps to dissipate his assets or otherwise frustrate the judgment in this case" (the "CPLR Motion"). (*Id.* Ex. 4.)

10. On September 30, 2020, the State Court entered a temporary restraining order restraining the Debtor from, among other things, "making or causing any sale, assignment, transfer, or interference with any property in which he has an interest." (*Id.* Ex. 5.)

11. On October 15, 2020, the New York Court held a hearing with respect to PAX's CPLR Motion and the Individual Debtor's opposition thereto. (*Id.* Ex. 6.)

12. On the same day, October 15, 2020, the New York Court entered an order (the "October 2020 Restraining Order") providing that the Individual Debtor "and/or the registered owners of (1) the Residence at the Sherry Netherland Hotel and (2) the yacht, 'the Lady May' are restrained from making or causing any sale, assignment, transfer, or interference with those assets." (*Id.* Ex. 7.)

13. HK USA is the registered owner of the Lady May. (Complaint ¶ 2.)

14. On December 24, 2020, PAX filed a motion seeking that the Individual Debtor be held in contempt based on the Lady May having allegedly left the jurisdiction. (*Id.* Ex. 9.)

15. On March 17, 2021, the State Court issued a decision and order holding the Individual Debtor in contempt (the "March 2021 Contempt Order") and stating, among other things, the following:

> The Court has reviewed the extensive submissions of the parties in connection with PAX's motion to hold Kwok in contempt. Passing the issue of whether any of Mr. Kwok's attorneys have violated the Code of Professional Conduct, it is clear that there has been an intolerable amount of gamesmanship, dissembling, and deceit in proceedings before this Court relating to the whereabouts and ownership of the yacht "Lady May."
>
> The defendant claims that the yacht was removed from the jurisdiction of this Court for "ordinary course" "winter maintenance" notwithstanding restraints imposed on the movement of the yacht by the Court. Rather than catalogue the many "shell games" defendant Kwok has engaged in with the assistance of counsel who should know better,

the Court grants the motion for contempt to the following extent: For every day that the yacht is outside the jurisdiction of this Court after May 15, 2021, defendant Kwok will be fined $500,000. The other restraints relating to the ownership and control of the yacht remain in place.

(*Id.* Ex. 10.)

16.   On July 8, 2021, PAX filed a motion (the "Final Contempt Motion") in the New York Court seeking a final contempt order against the Individual Debtor in connection with the alleged ongoing violation of the March 2021 Contempt Order. (*Id.* Ex. 12.)

17.   On July 19, 2021, together with the filing of the Individual Debtor's opposition to the Final Contempt Motion (which opposed the motion on the basis that the Individual Debtor did not own the Lady May and sought a stay pending the appeal of the March 2021 Contempt Order), counsel to HK USA, Attorney Lee Vartan, filed an "Affirmation" in opposition to the Final Contempt Motion (the "Vartan Affirmation"). (*Id.* Ex. 13.)

18.   The Vartan Affirmation asserted, among other things, that HK USA was the owner of the Lady May and that HK USA's "property interests are being affected by" the Final Contempt Motion. (*Id.* Ex. 13 ¶ 4.)

19.   On July 21, 2021, the State Court held a preliminary hearing on the Final Contempt Motion, at which hearing Mr. Vartan appeared as counsel for HK USA but did not make any statements on the record. (*Id.* Ex. 14, at 3:19–20.)

20.   On November 9, 2021, the Supreme Court of the State of New York Appellate Division, First Judicial Department (the "Appellate Division"), issued an order on the Individual Debtor's appeal of the March 2021 Contempt Order. *Pac. All. Asia Opportunity Fund L.P. v. Kwok Ho Wan*, 199 A.D.3d 423 (N.Y. App. Div. 2021) (the "Appellate Decision"). (*Id.* Ex. 15.)

21.   The Appellate Decision states as follows:

> The motion court acted within its discretion in holding defendant in civil contempt, as plaintiff established by clear and convincing evidence that defendant violated a lawful, clear mandate of the court, of which he had knowledge, and that such violation resulted in prejudice to plaintiffs rights (*see El-Dehdan v El-Dehdan*, 26 NY3d 19, 29 [2015]; Judiciary Law S 753).

(Bassett Decl. Ex. 15.)

22.  The Appellate Division concluded by instructing Justice Ostrager "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties." (*Id.* Ex. 15.)

23.  On February 2, 2022, the New York Court held its final evidentiary hearing with respect to the Final Contempt Motion (the "Final Contempt Hearing"). (*Id.* Ex. 16.)

24.  Attorney Vartan appeared and was heard at the Final Contempt Hearing as counsel to HK USA and also for Ms. Guo. (*Id.* Ex. 16, at 37:7–9, 37:25–38:1 & Ex. 17.)

25.  Attorney Vartan presented four witnesses at the Final Contempt Hearing: (1) Ms. Guo; (2) Momchil Ivanov, the captain of the Lady May at the time of the hearing, (3) Craig Heaslop, former captain of the Lady May, and (4) Russell Stockil, yacht management director for Yachtzoo (the yacht management company for the Lady May). Attorney Vartan made evidentiary objections during the presentation of these witnesses. The Individual Debtor called only one additional witness. (*Id.* Ex. 16.)

26.  In connection with the Final Contempt Hearing, Ms. Guo's direct testimony was introduced via affidavit while her cross-examination was conducted live. Ms. Guo testified that "she directed the Lady May's itinerary" and that "it was [her] decision for the boat to travel from New York to Florida in October 2020, not [her] father's decision." (*Id.* Ex. 18, at *5 & Ex. 19 ¶ 19.)

27.  Ms. Guo further testified: "I was aware . . . of the [March 2021 Contempt Order] requiring the Lady May to return to New York in May 2021.  However, given that I am the owner of the Lady May, and that neither HK USA nor I is a party to this action, I did not want the boat to travel to New York, and, after consulting with counsel, directed instead that it proceed to Europe . . ..  Again, that decision was mine alone, not my father's."  (*Id.* Ex. 19 ¶ 20.)

28.  On February 9, 2022, Justice Ostrager issued the Final Contempt Decision imposing a contempt fine against the Individual Debtor of $134 million.  (*Id.* Ex. 18.)

29.  Justice Ostrager noted in the Final Contempt Decision that "[p]ursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht."  (*Id.* Ex. 18, at *3.) Under the Appellate Decision, this was necessary to determine "whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok."  (*Id.* Ex. 18, at *1.)

30.  As to the issue of whether the Individual Debtor beneficially owns and controls the yacht, Justice Ostrager determined that

    a.  "The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May."  (*Id.* Ex. 18, at *4.)

    b.  "'A beneficial interest is '[a] right or expectancy in something . . . as opposed to legal title to that thing.''  Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht.  The key factor is whether 'the property benefitted [the beneficial owner] as if he had received the property directly.'"  (*Id.* Ex. 18, at *8 (internal citations omitted).)

    c.  The Individual Debtor "holds a beneficial interest in and controls the Lady May." (*Id.* Ex. 18, at *9.)

31. Justice Ostrager made numerous factual findings in support of this conclusion, including, among others:

a. The Individual Debtor had made "efforts to avoid and deceive his creditors by parking his substantial personal assets with a series of corporations, trusted confidants, and family members." (*Id.* Ex. 18, at *1.)

b. The Individual Debtor, "who is a self-declared multi-billionaire, had secreted his assets in a maze of corporate entities and with family members." (*Id.* Ex. 18, at *1.)

c. The Individual Debtor's use of corporate entities to shield assets from creditors was a "scheme" that had "enabled Kwok to assert that he has no assets despite his lavish lifestyle." (*Id.* Ex. 18, at *1.)

d. The Debtor "exercised dominion and control over" the Lady May. (*Id.* Ex. 18, at *2.)

e. "The testimony adduced at the hearing out of the mouths of defendants' witnesses clearly and convincingly demonstrated that Kwok beneficially owns and controls the Lady May and has utter contempt for this Court and the judicial process." (*Id.* Ex. 18, at *7.)

f. Based on the evidence in connection with the purchase of the Lady May "a reasonable inference is that Kwok provided the funds which were used to purchase the yacht." (*Id.* Ex. 18, at *4.)

g. "Subsequent to this Court's September 30, 2020 restraining Order, in October 2020 the Lady May was sent to Florida and then the Bahamas for repairs and was subsequently dispatched to Italy in October 2021, purportedly at the direction of Golden Spring. Ms. Guo acknowledged that she was aware of both this Court's September 30, 2020 restraining Order and this Court's subsequent March 16, 2021 Order directing that the Lady May be returned to the Court's jurisdiction." (*Id.* Ex. 18, at *5.)

h. Testimony of Ms. Guo "that she owns and controls the Lady May cannot be credited in any respect." (*Id.* Ex. 18, at *6–7.)

i. Ms. Guo "introduced no evidence that she exercised dominion and control of the Lady May, and provided no confirmation that she came into possession of the Lady May, other than as a ruse to shield the Lady May from being levied upon by her father's creditors." (*Id.* Ex. 18, at *7.)

j. "The machinations associated with the shell game Kwok has orchestrated with respect to the Lady May are of a piece with every other evasive and contemptuous act Kwok has taken during the five years this litigation has been pending, which is why there are 1,180 docket entries in this case." (*Id.* Ex. 18, at *7.)

16

k. "Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht." (*Id.* Ex. 18, at *8.)

l. "The evidence clearly and convincingly demonstrates that Kwok holds a beneficial interest in and controls the Lady May." (*Id.* Ex. 18, at *7.)

32. After issuance of the Final Contempt Decision, on February 15, 2022, the Individual Debtor filed his Chapter 11 petition, commencing this Chapter 11 case. (Main Case ECF No. 1.)

33. On March 1, 2022, PAX filed the Stay Relief Motion seeking relief from the automatic stay to pursue post-judgment proceedings in the New York Action.

34. On April 11, 2022, HK USA appeared in the Individual Debtor's Chapter 11 case and opposed the Stay Relief Motion. (Main Case ECF No. 203.)

35. That same date, on April 11, 2022, HK USA initiated this adversary proceeding by filing the Complaint against the Individual Debtor and PAX, asserting that HK USA is the exclusive legal owner of the Lady May and that the Individual Debtor does not hold an ownership interest in the Lady May. (Complaint at ¶¶ 39–41.)

36. On September 23, 2022, the Trustee filed the Counterclaims and the PJR Application. (ECF Nos. 36–37.)

37. The Trustee's First Counterclaim seeks a ruling pursuant to 11 U.S.C. §§ 541 and 542 (i) declaring that the Lady May is property of the Estate to be administered by the Trustee and (ii) ordering the surrender of the Lady May to the Trustee, all as a result of Justice Ostrager having already decided that the Individual Debtor beneficially owns and controls the Lady May. *See, e.g.*, Counterclaims, ¶ 111.

## V. DISCUSSION

11 U.S.C. § 541 states in pertinent part that

(a)  The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:

(1)  Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 542 states in pertinent part that

(a)  Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The instant dispute is whether the Individual Debtor beneficially owns – in other words, has an equitable interest in – the Lady May and if so whether HK USA must deliver the Lady May to the Trustee.  The Trustee argues that he is entitled to summary judgment as a matter of law on this issue because the HK Parties are collaterally estopped from arguing that the Individual Debtor did not beneficially own the Lady May as of the petition date.  The HK Parties object to the Motion for Summary Judgment.

### a.  Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), made applicable in the instant adversary proceeding by Fed. R. Bankr. P. 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact," a movant is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986). "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. '[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . ..'" *Celotex*, 477 U.S. at 322–23 (internal citations omitted). "But we do not think the *Adickes* language quoted above should be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof. Instead, as we have explained, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is

such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

### b. Collateral Estoppel Standard

Federal Courts apply the preclusion law of the jurisdiction rendering the purportedly preclusive decision. *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). Here, the Final Contempt Decision was rendered by a New York court. Under New York law, there are two elements of collateral estoppel: (a) an issue that is decisive in the present action is identical to an issue necessarily decided in a prior action and (b) the party to be estopped had a full and fair opportunity to litigate the issue in an earlier action. *Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 737 (N.Y. 2021); *Schwartz v. Pub. Adm'r of Bronx*, 246 N.E.2d 725, 729 (N.Y. 1969). It is the movant's burden to establish element (a), identity of issue, but, if that has been established, it is then the non-movant's burden to disprove element (b), full and fair opportunity to litigate. *Jeffreys v. Griffin*, 801 N.E.2d 404, 407 (N.Y. 2003) ("The proponent of collateral estoppel must show identity of the issue, while the opponent must demonstrate the absence of a full and fair opportunity to litigate."); *David v. Biondo*, 703 N.E.2d 261, 263 (N.Y. 1998) ("The party seeking the benefit of collateral estoppel must demonstrate that the identical issue was necessarily decided in the prior adjudication and is decisive in the newly presented circumstance and forum. To block the use of estoppel, a contestant can show the absence of a full and fair opportunity to present relevant views in the prior contest.") (internal citations omitted); *Schwarz*, 246 N.E.2d at 730 ("In De Witt, however, we indicated that the burden rests on the defendant to show that collateral estoppel should not be applied because he did not have a full and fair opportunity, just as the burden of showing that the issue was identical and necessarily decided rests upon the moving party. This apportionment of the burdens is both fair and necessary. Otherwise much of

the value of collateral estoppel will be lost.") (internal citations omitted.)  Under Federal Rule of

Civil Procedure 56, the burden to establish "full and fair opportunity" is not shifted to the

movant on a motion for summary judgment.  *See Celotex*, 477 U.S. at 322–323.

### c.  Identical Issue is Presently Decisive and Was Necessarily Decided

The Trustee argues that the issue of whether the Individual Debtor beneficially owns and

controls the Lady May is decisive to the instant action.  If the Individual Debtor is the beneficial

owner of the Lady May, it is property of the Estate and HK USA must therefore deliver it to the

Trustee.  The HK Parties advance no arguments to the contrary.

An issue is decisive in the present action when it tends to establish a claim or defense in

the present action.  *Eugenia VI Venture Holdings ex rel. AMC Invs., LLC v. Maplewood*

*Holdings LLC (In re AMC Invs., LLC)*, 524 B.R. 62, 78 (Bankr. D. Del. 2015) (applying New

York law); *see, e.g.*, *Ryan v. N.Y. Tel. Co.*, 467 N.E.2d 487, 491–92 (N.Y. 1984) (finding

determined issues regarding theft decisive as to the issue of the truth of alleged slanderous

remarks, a defense in the action before the court).  Considering the clear language of 11 U.S.C.

§§ 541 and 542, the Court agrees with the Trustee that a finding of the Individual Debtor's

beneficial ownership and control of the Lady May establishes the Trustee's First Counterclaim.

The Trustee further argues that Justice Ostrager necessarily decided the identical issue in

the Final Contempt Decision, which, the Trustee asserts is a final order for the purposes of

collateral estoppel.  The Trustee relies upon the findings of fact and conclusions of law in the

Final Contempt Decision regarding the Individual Debtor's beneficial interest in the Lady May,

and the context that the Appellate Decision and the preceding litigation provide to the Final

Contempt Decision.

The HK Parties argue that Justice Ostrager did not necessarily decide the identical issue in the Final Contempt Decision for several reasons.  First, they argue that Justice Ostrager only decided the Individual Debtor's interest in the Lady May – not HK USA's interest in it, which this adversary proceeding seeks to determine.  Second, they argue the purpose of the Final Contempt Decision was to determine whether the Individual Debtor could be held in contempt and, therefore, Justice Ostrager did not necessarily make determinations about property rights.  Third, they argue Justice Ostrager only decided that the Individual Debtor had "a" beneficial interest in the Lady May as opposed to deciding that the Individual Debtor beneficially owned the Lady May.  Fourth, they argue the Final Contempt Decision is not a final order for the purposes of collateral estoppel because it was not a turnover order but rather a preliminary order.

The Court agrees with the Trustee.  An issue was necessarily decided in a prior hearing where it was an "essential element of a finding," about which the prior court reached a final determination.  *In re AMC Investors, LLC*, 524 B.R. at 78.  As set forth in undisputed fact 30, the Final Contempt Decision finds multiple times that the Individual Debtor has a beneficial interest in and controls the Lady May.  The Appellate Decision clearly instructed Justice Ostrager to determine this issue.  The motions before the Final Contempt Decision – from the motions for retraining orders to the motions for contempt – reflect that PAX was seeking to restrain and possibly levy on the Lady May.  In connection with that effort, the Individual Debtor had been found in contempt, which contempt finding could only be sustained if Justice Ostrager determined that the Individual Debtor had a property interest in the Lady May.  The Vartan Affirmation reflects that HK USA's property interests were at stake in the contempt proceedings. The Individual Debtor's property interest in the Lady May was an essential element for finding him in final contempt.

The HK Parties arguments to the contrary are unavailing. As to their first argument, the Individual Debtor's beneficial ownership of the Lady May is not inconsistent with HK USA being the record owner of the Lady May. No party disputes this fact. Furthermore, the First Counterclaim, even if arguably not the Complaint, is about the Individual Debtor's interest in the Lady May.

As to their second argument, the HK Parties have selectively read the Final Contempt Decision. While the Final Contempt Decision does state that the issue before it was "whether the plaintiff, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), has met the burden of establishing that the Court should enter a final Order of Civil Contempt against Kwok" (Bassett Decl. Ex. 18, at *1), it goes on to say that "[p]ursuant to the Appellate Division's Order, this Court scheduled the February 2, 2022 evidentiary hearing to resolve the issue of whether Kwok beneficially owns and controls the yacht" (*id.* Ex. 18, at *3). The Appellate Decision instructed Justice Ostrager "to proceed with an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties." (*Id.* Ex. 15.)

As to the third argument, while Justice Ostrager did find that the Individual Debtor "holds a beneficial interest in and controls the Lady May," (*id.* Ex. 18, at *9), he also found that, *e.g.*, "Kwok has much more than a beneficial interest in the Lady May. Not only does Kwok control the yacht, it appears he provided the funds to purchase it and he is the person who principally enjoys the use of the yacht" (*id.* Ex. 18, at *8.) and that the testimony of Ms. Guo "that she owns and controls the Lady May cannot be credited in any respect" (*id.* Ex. 18, at *6–7). The Court concludes that it is clear that Justice Ostrager found that the Individual Debtor is the beneficial owner of the Lady May.

As to the fourth argument, Justice Ostrager used variations on the phrase clear and convincing multiple times with regards to his findings that the Individual Debtor beneficially owns and controls the Lady May.  (*See* Facts 30 & 31.)  He did not apply the likelihood of success on the merits standard which would apply to a preliminary injunction, despite the HK Parties' arguments to the contrary.  Rather, Justice Ostrager applied the burden of proof employed in a final determination on the merits.  Although the HK Parties argue otherwise, there is no ambiguity in the Appellate Decision.  The Appellate Decision ordered "an evidentiary hearing to resolve a dispute as to ownership and control of the yacht, and to assess appropriate penalties."  (*Id.* Ex. 15.)  The "assess appropriate penalties" portion of the instruction makes clear that the Appellate Division directed the ownership dispute be resolved at a hearing *on contempt*.

As the Trustee argues, a judgment is final under New York law despite the pendency of an appeal or remaining time to appeal.  *Parkhurst v. Berdell*, 18 N.E. 123, 125–26 (N.Y. 1888) ("As it appears to have been material to establish in this action some of the matters adjudicated in that in favor of Mrs. Parkhurst, it was competent for her to establish them by the judgment roll introduced in evidence.  But that judgment was rendered in September, 1878, and before the trial of this action an appeal had been taken to the general term. That is all that appeared upon the trial of this action.  But the appeal did not suspend the operation of the judgment as an estoppel."), *distinguished in part by Halpern v. Amtorg Trading Corp.*, 53 N.E.2d 758, 760–61 (N.Y. 1944) (holding that on the facts and circumstances before it an appellate court could take judicial notice of a subsequent ruling overturning a decision that had been the basis of collateral estoppel, even if that subsequent ruling was not part of the record on appeal); *5512 OEAAJB Corp. v. Hamilton Insurance Co.*, 138 N.Y.S.3d 555, 558 (N.Y. App. Div. 2020) ("Contrary to Hamilton's

contention, the mere pendency of an appeal does not deprive a challenged judgment or order of its res judicata effect"); *DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) ("Under New York law, 'the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding.'") (citing *In re Amica Mutual Ins. Co.*, 445 N.Y.S.2d 820, 822 (N.Y. App. Div. 1981)); *Harris v. Hammond*, 18 How. Pr. 123, 124 (N.Y. Gen. Term 1859) ("The fact, that an appeal has been brought, does not affect the conclusive nature of the judgment as a bar, while it remains unreversed."); *Ratner v. Paramount Pictures, Inc.*, 6 F.R.D. 618, 620 (S.D.N.Y. 1942) ("The fact that the time to appeal has not expired or that an appeal is pending, does not alter the finality of the judgment."); *Manners v. McMahon (In re David X. Manners Co., Inc.)*, 596 B.R. 217, 223 (Bankr. D. Conn. 2018) ("It is also well established in New York 'that the pendency of an appeal does not affect the use of an order or judgment as an estoppel[.]'.") (internal citations omitted) (alterations in original). Therefore, insofar as the HK Parties argue the contrary, the Court disagrees. The Final Contempt Decision may be accorded preclusive effect even though the time to appeal it was stayed by the filing of the Individual Debtor's Chapter 11 petition.

The Court found, for the reasons stated above and those stated on the record, that there is no genuine dispute of material fact that there is an identity between the issue necessarily decided by the Final Contempt Decision and the issue that is decisive in determining the Trustee's First Counterclaim and the Trustee is entitled to a judgment as a matter of law.

### d. HK Parties Had Full & Fair Opportunity to Litigate

Having so found, the Court considers the parties' arguments as to whether the HK Parties had a full and fair opportunity to litigate this issue in the New York Action.

The Trustee admits, as the HK Parties assert, that HK USA was not a party of record in the New York Action. The Court agrees.

Nevertheless, the Trustee argues that HK USA was in privity with the Individual Debtor during the New York Action. The Trustee first argues that the HK Parties were in privity with the Individual Debtor because they all sought the same determination regarding the Lady May in the New York Action. In support of his argument, the Trustee notes several undisputed facts, namely, (a) the Individual Debtor and the HK Parties all asserted in the New York Action that the Lady May is *not* beneficially owned and controlled by the Individual Debtor but rather owned by HK USA; (b) the HK Parties filed the Vartan Affirmation contemporaneously with the Individual Debtor's objection to the Final Contempt Motion; and (c) the HK Parties appeared at two hearings, including the Final Contempt Hearing, at which, moreover, they presented the *majority* of witnesses for the Individual Debtor. The Trustee further argues that the HK Parties were deeply involved with the litigation regarding the Lady May in the New York Action and, hence, the realities of the litigation support collateral estoppel. The Trustee supports this argument with the undisputed facts that (d) the HK Parties recognized their rights *vis-à-vis* the Lady May would potentially be impacted by the New York Action; (e) the HK Parties filed the Vartan Affirmation; (f) the HK Parties appeared at two hearings; (g) Ms. Guo provided testimony for the Final Contempt Hearing; and (h) the HK Parties presented and defended Ms. Guo's testimony and others involved in the operation and management of the Lady May.

For there to have been a full and fair opportunity to litigate, it is required that the party to be estopped "was a party to the previous action, or in privity with a party who was." *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008). Determining privity is a fact-intensive inquiry. *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 744 (N.Y. 1970) ("The

character and extent of the participation in litigation which will in legal effect make one a party

[although not a party of record] is most often an issue of fact.").  Parties in privity include "those

who are successors to a property interest, those who control an action although not formal parties

to it, those whose interests are represented by a party to the action, and possibly coparties to a

prior action."  *Id.*; *see Harlem Bus. Ctr. v. Rothenberg*, 205 N.Y.S. 353, 353 (N.Y. App. Term

1924) ("The application of the doctrine of res adjudicata, beyond the immediate parties to the

previous adjudication, prescribes that the third party must be either privy to, or have the right to

control the conduct of, the litigation, or have been vouched in, or perhaps have taken some open

and notoriously active part in the actual conduct of the litigation.")  Courts look for, *inter alia*, a

"substantial identity of the incentives" between the party of record in the prior action and the

party to be estopped.  *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir.

1995) (applying New York law) (hereinafter "*Chase*").  Here, the undisputed facts the Trustee

advances make a showing of a "substantial identity of the incentives" between the Individual

Debtor and the HK Parties – both did not want PAX to obtain the Lady May, the Individual

Debtor's litigation positions advanced this shared interest, and the HK Parties themselves were

involved in the litigation of the Final Contempt Motion, including filing the Vartan Affirmation

and participation in the Final Contempt Hearing.  Upon these facts, the Court finds that the

Trustee has, at least, made his initial "showing" under *Celotex* that the HK Parties were in privity

with the Individual Debtor during the New York Action.

Under New York law, a court must also take "consideration of the 'realties of litigation,'

such as recognition that if the first proceeding involved trivial stakes, it may not have been

vigorously litigated."  *Staatsburg Water Co. v. Staatsburg Fire Dist.*, 527 N.E.2d 754, 756 (N.Y.

1988) (internal citations omitted); *cf. Schwarz*, 246 N.E.2d at 729.  Factors to consider include

"1) the nature of the forum, 2) importance of the claim, 3) the incentive and initiative to litigate, and 4) the actual extent of the litigation." *Fuller v. Rea (In re Rea)*, 606 B.R. 531, 539 (S.D.N.Y. 2021) (applying New York law). Here, the Trustee points to the restraining order issued in October 2020 restraining HK USA, the Vartan Affirmation, which states that HK USA understood its property rights were at stake, and the HK Parties participation – including Ms. Guo's testimony at and Attorney Vartan's participation in the Final Contempt Hearing in support of the Individual Debtor's arguments. Upon these facts, the Court finds that the Trustee has also made his initial "showing" that the realities of the litigation support applying collateral estoppel.

As the Trustee had made his "showing," the Court, therefore, considers whether the HK Parties – who bear the burden on this element – have established a genuine issue of material fact as to whether the New York Action afforded them a full and fair opportunity to litigate.

The HK Parties advance three arguments. First, the HK Parties argue that they were not in privity with the Individual Debtor during the New York Action. The HK Parties argue that, in asserting his fifth amendment rights with regard to the Final Contempt Hearing, the Individual Debtor did not share the HK Parties' interest and his familial relationship with Ms. Guo does not alone create privity. Second, the HK Parties argue that their involvement in the New York Action leading up to the Final Contempt Decision were minimal – attendance at two hearings, participation at one hearing, direct testimony by affidavit, live defense of cross-examination without an opportunity to redirect, and the filing of the Vartan Affirmation. Third, they argue that because the HK Parties, as non-parties, lack an ability to appeal the Final Contempt Decision – or in any event the Trustee now controls the appeal – the realities of the litigation indicate that they did not have a full and fair opportunity to litigate.

As to the first argument that the HK Parties were not in privity with the Individual Debtor during the New York Action, the argument is not persuasive.  It is undisputed that the Individual Debtor was seeking to avoid contempt sanctions.  However, in attempting to avoid contempt, it is also undisputed that the Individual Debtor argued that the Lady May was property of HK USA and not him.  It is also undisputed that the Individual Debtor asserted his fifth amendment right in the New York Action.  Asserting his fifth amendment right, however, did not prevent his counsel from briefing and arguing his case.  Therefore, there was an identity of incentives between the HK Parties and the Individual Debtor regarding the Lady May.

As to the second argument, the HK Parties' argument that their involvement in the proceedings was minimal, is also not persuasive given the undisputed facts regarding the realities of the litigation.  It is undisputed that as of October 2020, the HK Parties were subject to a restraining order.  It is undisputed that the HK Parties filed the Vartan Affirmation in conjunction with the Individual Debtor's objection to the Final Contempt Motion, which affirmation admitted the gravity of the situation and its potential effect on HK USA's ownership of the Lady May.  It is undisputed that Ms. Guo testified at the Final Contempt Hearing.  It is also undisputed that Attorney Vartan defended four out of the five witnesses for the Individual Debtor as counsel for the HK Parties.  Moreover, because the HK Parties were in privity with the Individual Debtor, the Individual Debtor's own engagement with the litigation advanced the HK Parties' interests. For all of these reasons, the HK Parties involvement in the New York Action was not minimal.

As to the third argument, the Court first notes that in considering the realities of litigation, a court should consider whether there is a possibility for appellate review.  *See Malloy v. Trombley*, 405 N.E.2d 213 (N.Y. 1980) (holding that under New York law there is not a hard and fast rule as to whether alternative findings, which may evade review, have collateral estoppel

29

effect); *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892 (2d Cir. 1997) (applying New York law and holding that where an appellate court declined to reach alternative findings, such alternative findings would have no preclusive effect); *People v. Medina*, 617 N.Y.S.2d 491 (N.Y. App. Div. 1994) (holding suppression orders lack preclusive effect because prosecution's right to appeal is circumscribed by statute); *Bland v. State*, 263 F. Supp. 2d 526 (E.D.N.Y. 2003) (applying New York law and holding that findings by an administrative agency which were subject to limited rights to appeal to courts of law were not preclusive); *see also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986) (applying federal law and holding that because parties cannot further appeal issues which were not affirmed or reached after a partial affirmance of an order, that such determinations which were not affirmed or reached do not have preclusive effect).  To be clear, this consideration is discrete from the consideration, discussed above, of whether a prior judgment subject to appeal is final for the purposes of collateral estoppel.

Nevertheless, the Court is not persuaded that appellate review was impossible in the present case.  Unlike in *Bland*, the New York Action was a civil action in a court of law.  Unlike in *Medina*, the findings and conclusions of the New York Court at issue here could be appealed without an extra burden on the appellant.  Unlike in *Aviall* or *Gelb*, the findings and conclusions at issue have not been partially affirmed and partially passed over.  The cases cited by the HK Parties are inapposite and are all concerned with due process.  There is no due process concern in this case because an appeal could have been taken.  In particular, the Court is not persuaded by the HK Parties' arguments on these facts and circumstances because HK USA affirmatively opposed the Stay Relief Motion and filed the Complaint, asserting that the ownership of the Lady May should be decided in this Court rather than in the New York Action.

The Court, finding no genuine dispute of material fact and being unpersuaded by the HK Parties' arguments, concludes that the HK Parties had a full and fair opportunity in the New York Action to litigate whether the Individual Debtor beneficially owned and controlled the Lady May.

## VI. CONCLUSION

For the reasons stated on the record and set forth above, the Court concludes that there is no genuine issue of material fact as to whether (a) the issue of Individual Debtor's beneficial ownership and control of the Lady is decisive as to the First Counterclaim and the identical issue was necessarily decided by Justice Ostrager in the Final Contempt Decision, which found by clear and convincing evidence that the Individual Debtor beneficially owned and controlled the Lady May or (b) the HK Parties had a full and fair opportunity to litigate this issue in the New York Action. The Court was persuaded by the Trustee that an identity of issue existed and not persuaded by the HK Parties that they lacked a full and fair opportunity to litigate this issue. Therefore, the Court concludes that, as a matter of law, the HK Parties are collaterally estopped from contesting the Individual Debtor's beneficial ownership and control of the Lady May. On this basis, the Court further concludes that, as a matter of law, the Trustee is entitled to summary judgment on the First Counterclaim, namely that pursuant to 11 U.S.C. § 541(a) the Lady May is property of the Estate, which, pursuant to 11 U.S.C. § 542(a), the HK Parties must deliver to the Trustee.

Dated at Bridgeport, Connecticut this 30th day of March, 2023.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut

31