## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | Chapter 11 |
| HO WAN KWOK, *et al.*, | Case No. 22-50073 (JAM) |
| Debtors. | (Jointly Administered) |
| | |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, | Adv. P. No. 22-05003 (JAM) |
| Plaintiff | Re: ECF Nos. 36 & 87 |
| v. | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | |
| Defendant. | |
| | |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK, | |
| Counter-Plaintiff | |
| v. | |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, and MEI GUO, | |
| Counter-Defendants. | |

## <u>APPEARANCES</u>

Luc A. Despins
Avram E. Luft
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglass S. Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counter-Plaintiff Luc A. Despins, Chapter 11 Trustee for the Estate of Ho Wan Kwok, and Counsel*

Lee Vartan                              Aaron Romney
Chiesa Shahinian & Giantomasi PC        John L. Cesaroni
One Boland Drive                        James M. Moriarty
West Orange, NJ 07052                   Zeisler & Zeisler, P.C.
                                        10 Middle Street
        and                             Bridgeport, CT 06604

Sam Della Fera, Jr. (argued)
Melissa F. Wernick
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068

*Counsel for Counter-Defendants HK International Funds Investments (USA) Limited, LLC, and Mei Guo*

**MEMORANDUM OF DECISION AND ORDER**
**DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is the Motion to Dismiss Counterclaims filed by Counter-Defendants

HK International Funds Investments (USA) Limited, LLC ("HK USA") and Ms. Mei Guo

(together with HK USA, the "HK Parties"), the sole member of HK USA and Mr. Ho Wan

Kwok's (the "Individual Debtor") daughter.  (ECF No. 87,[1] the "Motion to Dismiss.")  The HK

Parties move to dismiss the second, third, fourth, and fifth counterclaims (ECF No. 36, in

---

[1]  References to the docket in the instant adversary proceeding will be styled "ECF." References to the docket in the main case, *In re Kwok, et al.,* Case No. 22-50073 (Bankr. D. Conn. 2022), will be styled "Main Case ECF."

pertinent part, the "Counterclaims") of Counter-Plaintiff Mr. Luc A. Despins, in his capacity as

Chapter 11 trustee (the "Trustee") for the estate (the "Estate") of the Individual Debtor.  For the

reasons stated below, the Court denies the Motion to Dismiss the Second, Third, and Fifth

Counterclaims.  The Court is not ruling on dismissal of the Fourth Counterclaim based upon the

statements of the parties that dismissal of the Fourth Counterclaim should not be addressed at

this time.

## II.  BACKGROUND

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15,

2022.  (Main Case ECF No. 1.)  The Individual Debtor's case is jointly administered with two

affiliated corporate Chapter 11 cases.  (Main Case ECF Nos. 970 & 1141.)  For the reasons set

forth therein, on June 15, 2022, the Court entered a memorandum of decision and order

appointing a Chapter 11 trustee.  (Main Case ECF No. 465.)  *In re Kwok*, 640 B.R. 514 (Bankr.

D. Conn. 2022).  On July 8, 2022, Mr. Despins was appointed as the Trustee.  (Main Case ECF

No. 523.)

Prior to the appointment of the Trustee, on April 29, 2022, the Court entered a stipulated

order, which, *inter alia*, compelled HK USA to deliver the pleasure yacht Lady May to the

navigable waters of Connecticut on or before July 15, 2022.  (Main Case ECF No. 299, the

"Stipulated Delivery Order.")  As part of the stipulation, HK USA placed $37 million into an

escrow account (the "Escrowed Funds"), to secure its delivery obligation.  (Main Case ECF No.

299.)  The Escrowed Funds can only be transferred upon the Court's order and/or completion of

a certification process (the "Certification Process") set forth in the Stipulated Delivery Order.

(*Id.*)  The Lady May was timely delivered to the navigable waters of Connecticut.  (*See* Main

Case ECF No. 723.)

On April 11, 2022, HK USA initiated the instant adversary proceeding by filing its complaint against Pacific Asia Alliance Opportunity Fund LP ("PAX") and the Individual Debtor. (ECF No. 1, the "Complaint.") Among other things, the Complaint seeks a declaratory judgment that, as of the petition date, the Lady May was property of HK USA – not the Individual Debtor – and, therefore, is not property of the Estate. On August 26, 2022, HK USA voluntarily dismissed the complaint against PAX. (ECF No. 30.)

On September 23, 2022, the Trustee, having stepped into the Individual Debtor's shoes as a defendant in this adversary proceeding, filed an Answer and Counterclaims (ECF No. 36.) The Trustee makes factual allegations common to all Counterclaims in paragraphs 7 through 104. The allegations regarding specific Counterclaims are as follows:

 a. The Second Counterclaim alleges that HK USA is the alter ego of the Individual Debtor and, hence, pursuant to 11 U.S.C. §§ 541, 542, and 544, its property, including without limitation the Lady May and the Escrowed funds, is property of the Estate, which the HK Parties must deliver to the Trustee. (ECF No. 36 ¶¶ 112–19.)

 b. The Third Counterclaim alleges that the Individual Debtor beneficially owns HK USA and, hence, pursuant to 11 U.S.C. §§ 541, 542, and 544, Ms. Guo's membership interest in HK USA is property of the Estate, which the HK Parties must deliver to the Trustee. (*Id.* ¶¶ 120–23.)

 c. The Fourth Counterclaim alleges, in the alternative to the First, Second, and Third Counterclaims, that the Lady May was fraudulently transferred to Ms. Guo and HK USA by the Individual Debtor and, hence, pursuant to 11 U.S.C. §§ 544, 548, and 550, as well as N.Y. DEBT. & CRED. § 276 (repealed 2020), the HK Parties must surrender the Lady May or the value of it to the Trustee. (*Id.* ¶¶ 124–36.)

 d. The Fifth Counterclaim alleges, in alternative to the Second and Third Counterclaims, that HK USA negligently caused the Individual Debtor to incur $134 million in contempt fines, which were assessed by the Final Contempt Decision. (*Id.* ¶¶ 137–41.)

On October 4, 2022, a summons issued which included Ms. Guo as a counter-defendant. (ECF No. 43.) On December 22, 2022, the HK Parties filed the Motion to Dismiss (ECF No. 87)

4

and a memorandum of law in support of the Motion to Dismiss (ECF No. 88, the "Memo Supporting Dismissal").

The Motion to Dismiss asserts that the Trustee lacks standing to bring the Second, Third, and Fifth Counterclaims in their entirety as well as the Fourth Counterclaim in part and, therefore, pursuant to Fed. R. Civ. P. 12(b)(1), those Counterclaims should be dismissed.  The Motion to Dismiss additionally asserts that the Trustee has failed to state a claim upon which relief can be granted as to the Second Counterclaim in part, and the Fourth and Fifth Counterclaims in their entirety, and, therefore, pursuant to Fed. R. Civ. P. 12(b)(6), those counterclaims should be dismissed.  On January 12, 2023, the Trustee filed an objection to the Motion to Dismiss.  (ECF No. 90, the "Objection.")  On March 1, 2023, the HK Parties filed a reply in support of the Motion to Dismiss.  (ECF No. 97, the "Reply.")  The Motion to Dismiss is fully briefed.

A hearing on the Motion to Dismiss was held on April 11, 2023.  During the hearing, the HK Parties additionally moved for the dismissal of the Third Counterclaim under Fed. R. Civ. P. 12(b)(6).  As noted above, neither the Trustee nor the HK Parties advanced arguments regarding the Fourth Counterclaim during the hearing and therefore the Court is not ruling on dismissal of the Fourth Counterclaim.  The Motion to Dismiss is ripe for decision.

### III.  JURISDICTION[2]

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b).  This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984.  The instant proceedings are

---

[2] The Court considers the issue of standing, while jurisdictional, in the discussion below.

statutorily core proceedings.  28 U.S.C. § 157(b)(2)(A), (C), (E), (H).  The Second and Third Counterclaims raise no constitutional concerns precluding this Court from exercising jurisdiction.  *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).  The Fifth Counterclaim sounds in common law negligence, which potentially implicates constitutional concerns.  *Stern*, 564 U.S. at 487–99.  Although both the HK Parties have consented to this Court's jurisdiction over the Complaint and the Trustee has admitted this Court has jurisdiction over the Complaint, neither party has either expressly consented or withheld consent to adjudication of the Fifth Counterclaim in this Court.  *Cf. Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).  Should a reviewing court disagree with this Court's exercise of jurisdiction over the Fifth Counterclaim, the Court submits its findings of fact and conclusions of law with regard to the Fifth Counterclaim as proposed findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[3]

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV.  DISCUSSION

### A.  Standing

The Court must consider the arguments of the HK Parties that the Trustee lacks standing to bring the claims in the Second, Third, and Fifth Counterclaims before considering dismissal on the merits of those claims.  *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006).  "To have standing, '[a] plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.'"  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1091 (2d Cir. 1995) (citing

---

[3]  The Court notes that none of the parties have, at this time, moved to withdraw the reference regarding the Fifth Counterclaim.  The Court believes it does not have the authority to do so *sua sponte*.

6

*Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)) (modifications in the original). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The relevant jurisdictional facts must be "clearly alleged." *Warth v. Seldin*, 422 U.S. 490, 490 (1972), which is a lower pleading standard than required for pleading the merits of a cause of action. *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018); *Toretto v. Donnelley Fin. Solutions, Inc.*, 523 F. Supp. 3d 464 (S.D.N.Y. 2021); *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 156 (S.D.N.Y. 2018). A court may resolve disputed jurisdictional facts by reference to evidence outside the pleadings. *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991), *reaff'd by* 999 F.2d 33 (2d Cir. 1993).

The HK Parties assert *Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991), establishes that the Trustee lacks standing to bring the Second, Third, and Fifth Counterclaims. The HK Parties argue that under applicable non-bankruptcy law these Counterclaims would be barred under the doctrine of *in pari delicto* because they allege that the Individual Debtor engaged in wrongdoing with the HK Parties to hinder, delay, and defraud his creditors. Under *Wagoner*, the Individual Debtor's conduct would be imputed to the Trustee, arguably depriving him of standing to bring these Counterclaims against his fellow wrongdoers. Hence, the HK Parties assert, these Counterclaims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7012.

The Trustee contends that *Wagoner* does not bar his standing to bring the Counterclaims. According to the Trustee, the Second and Third Counterclaims are not barred by *Wagoner* because *Wagoner*: (i) does not apply to insiders; (ii) does not apply to alter ego claims, (iii) does

not apply to actions brought under 11 U.S.C. § 544; and (iv) does not apply to non-corporate debtors.  The Trustee further argues that the Fifth Counterclaim is not barred by *Wagoner* because it is brought in the alternative and does not allege that the Individual Debtor engaged in wrongdoing.  Therefore, the Trustee asserts, he has standing to bring the claims in the Second, Third, and Fifth Counterclaims.

In *Wagoner*, the Second Circuit held that "a bankruptcy trustee has no standing *generally* to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself."  944 F.2d at 118 (emphasis added); *see Hirsch*, 72 F.3d at 1093 ("Thus, the trustee stands in the shoes of the debtors, and can only maintain those actions that the debtors could have brought prior to the bankruptcy proceedings."); *Sobchack v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir.1994) ("Bankruptcy courts have long been charged with ascertaining, under state law, whether claims belong to the bankruptcy estate or to other claimants.").  *But see Wagoner*, 944 F.2d at 118 ("The trustee insists he is not asserting the claims of the noteholders, so it is unnecessary for us to delve deeply into when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors."); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) ("Under the Bankruptcy Code, the bankruptcy trustee may bring claims founded, *inter alia*, on the rights of the debtor and on certain rights of the debtor's creditors.").

Where a claim belongs to the debtor, *Wagoner* also instructs lower courts to consider whether the trustee, standing in the shoes of the debtor, is *in pari delicto* by imputation.  944 F.2d at 119–20.  The parties focus on this aspect of *Wagoner*.  While an assertion of *in pari delicto* is typically considered an affirmative equitable defense, the *Wagoner* doctrine, including its consideration of *in pari delicto*, "functions as a prudential standing limitation."  *Carney ex rel.*

8

*Highview Point Partners, LLC v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 228 (D. Conn. 2015); *cf. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 346–47 (3d Cir. 2001). *But see Kirschner v. KPMG LLP*, 938 N.E.2d 941, 959–60 (N.Y. 2010) (Ciparick, J. dissenting); *Adelphia Commc'n Corp. v. Bank of Am., N.A. (In re Adelphia Commc'n Corp.)*, 365 B.R. 24, 45 (Bankr. S.D.N.Y. 2007).

In sum, under *Wagoner*, the Court must consider (i) whether the Second, Third, and Fifth Counterclaims belong to the Estate under applicable non-bankruptcy law and (ii) whether, if so, the HK Parties' *in pari delicto* defenses bar the Trustee's recovery under applicable non-bankruptcy law. *Wagoner*, 944 F.2d at 119–20; *see Adelphia*, 365 B.R. at 45–46. The Court must also consider whether the Trustee otherwise has standing to bring the Second, Third, and Fifth Counterclaims. *PepsiCo*, 884 F.23 at 700.

### i.  The Second Counterclaim

The Court must look to applicable non-bankruptcy law to determine whether the Estate owns the Second Counterclaim – the Trustee's alter ego claim. *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession.").

Bankruptcy courts generally apply forum state choice-of-law rules for issues of state law. *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Under Connecticut law, "[t]he law of the governing jurisdiction of a foreign limited liability company governs: (1) The internal affairs of the company; (2) the liability of a member as member and a manager as manager for a debt, obligation or other liability of the company; and (3) the liability of a series of the company." Conn. Gen. Stat. § 34-275(a). Based on a

predecessor statute, the Connecticut Supreme Court has ruled that the governing jurisdiction of a foreign limited liability company determines the issue of veil-piercing. *Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007). Federal courts, moreover, apply the same rule. *In re Rouette*, 564 B.R. 157, 174 (Bankr. D. Conn. 2017). HK USA is a Delaware limited liability company. Therefore, the Court must determine whether Delaware law would allow the Trustee to bring the Second Counterclaim.

Here, the Trustee is seeking to "reverse pierce" the corporate veil between the Individual Debtor and HK USA. Namely, the Trustee is seeking to hold HK USA liable for the debts of its alleged beneficial owner and controller – the Individual Debtor. Delaware law allows "outsider" reverse veil-piercing, but "insider" reverse veil-piercing has not yet been "endorsed." *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021). "Insider reverse veil-piercing is implicated where 'the controlling [member] urges the court to disregard the corporate entity that otherwise separates the [member] from the corporation.' Outsider reverse veil-piercing is implicated where 'an outside third party, frequently a creditor, urges a court to render a company liable on a judgment against its member.'" *Manichaean*, 251 A.3d at 710 (internal citations omitted) (modifications in original). Therefore, the first prong of the *Wagoner* doctrine bars the Second Counterclaim insofar as the Trustee "stands in the shoes of the [Individual Debtor] . . .." *Hirsch*, 72 F.3d at 1093. Thus, the Court does not need to address the second prong of the *Wagoner* doctrine, *i.e.*, *in pari delicto*.

Nevertheless, a failure of standing under *Wagoner* is not alone reason to dismiss the Second Counterclaim, given the Trustee's assertion that he may bring the it on behalf of creditors, thereby avoiding the *Wagoner* doctrine entirely. *See Wagoner*, 944 F.2d at 118; *PepsiCo*, 884 F.2d at 700. The Court must consider this argument.

10

In particular, the Trustee brings the Second Counterclaim under 11 U.S.C. § 544(a).

Section 544(a) states

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . [*e.g.*,] a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on simple contract could have obtained such a judicial lien, whether or not such creditor exists;

Among other things, the Trustee asserts that this provision affords him the rights and powers of a hypothetical judicial lien creditor to pursue an alter ego claim.

The Court concludes that the plain text of section 544(a) and binding precedent support the Trustee's assertion. Section 544(a) states that the Trustee has "the rights and powers of, *or* may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by," *e.g.*, a hypothetical judicial lien creditor (emphasis added). The limiting principle on section 544(a) is that a trustee may only assert the rights and powers of a *hypothetical* creditor under that section – *i.e.*, it does not give the trustee standing to bring particularized claims of particular creditors. *Compare* 11 U.S.C. § 544(a) (giving a trustee rights and powers, including avoidance rights and powers, of certain *hypothetical* creditors) *with* 11 U.S.C. § 544(b)(1) (giving trustee *avoidance* rights and powers of *actual* creditors); *see* Richard J. Mason & Patricia K. Smoots, *When Do the Creditors' Shoes Fit?: A Bankruptcy Estate's Power to Assert the Rights of a Hypothetical Judgment Creditor*, 91 AM. BANKR. L.J. 435, 446 (Summer 2017).

This interpretation of section 544(a) is in accord with Second Circuit and District of Connecticut precedent. In *PepsiCo*, the Second Circuit determined whether under Ohio law, PepsiCo had standing to bring a third-party alter ego claim against a debtor's parent outside of the debtor's District of Ohio bankruptcy proceedings. 884 F.2d at 690–92. Importantly, the

trustee in the Ohio bankruptcy case had already brought an alter ego claim – also under Ohio

law. *Id.* Central to the Second Circuit's determination, therefore, was the issue of whether the

trustee had standing in the bankruptcy case to bring the alter ego claim – and if the trustee, rather

than PepsiCo, was the proper party to pursue that claim given the bankruptcy proceedings. *Id.* at

696–702. In framing the issue, the Second Circuit stated

> It is plain from [legislative history] that Congress intended to protect all creditors by
> making the trustee the proper person to assert claims against the debtor. This reasoning
> extends to common claims against the debtor's alter ego or others who have misused the
> debtor's property in some fashion. If a claim is a general one, with no particularized
> injury arising from it, and if that claim could be brought by any creditor of the debtor, the
> trustee is the proper person to assert the claim, and the creditors are bound by the
> outcome of the trustee's action.

*Id.* at 700–01. Continuing its discussion of the issue, the Second Circuit stated

> . . . we believe that under the Bankruptcy Code and the circumstances of this case, if
> either of PepsiCo's asserted causes of action in this suit is property of the debtor *or a
> claim otherwise properly asserted by the bankruptcy trustee*, PepsiCo does not have
> *standing* to raise that cause of action outside of the bankruptcy proceeding.

*Id.* at 702 ("standing" emphasized in original, remaining emphasis added). In arriving at this

standard, the Second Circuit adopted the approach of the Seventh Circuit in *Koch Refining v.*

*Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987). In *Koch Refining*, the Seventh

Circuit held that a bankruptcy trustee could pursue alter ego claims under section 544 where

there was generalized rather than particularized harm to creditors because, under that provision a

trustee is "the representative of the general creditors." 831 F.2d at 1351–54.[4]

---

[4] The Seventh Circuit goes on to discuss how on the facts before it *in pari delicto* would not bar
such a claim under 11 U.S.C. § 544 because the corporation was itself injured. *Id.* The parties
here, however, are agreed that imputation of the Individual Debtor's fault to the Trustee does not
apply to claims properly brought under 11 U.S.C. § 544. (Reply, at *7–8.) The parties' position
is supported by case-law: "[N]either the *Wagoner* rule nor the *in pari delicto* doctrine apply to a
trustee's statutory standing under Section 544 of the Bankruptcy Code." *Wells Fargo Bank, N.A.
v. First Republic Bank (In re Salander)*, 503 B.R. 559, 569 n. 12 (S.D.N.Y. 2013); *see Arnold v.*

*Wagoner* did not abrogate *PepsiCo*, but rather explicitly stated it was dealing with the case where the trustee was "not asserting the claims of [creditors]" and it did not reach the issue of "when, if ever, a trustee may sue a third party on behalf of the bankrupt's creditors." *Wagoner*, 944 F.2d at 118; *see Hirsch*, 72 F.3d at 1093 (applying both *PepsiCo* and *Wagoner*). In *Wagoner*, the trustee brought particularized claims of particular creditors and asserted those claims belonged to the debtor.  The Second Circuit held that "to the extent [the claim that the broker improperly invested trust funds of the debtor's clients and the debtor] alleges money damages to the 'clients of [the debtor],' it belongs only to the creditors and the trustee has no standing to assert it," 944 F.2d at 119–20, and that *in pari delicto* barred the claim insofar as it claimed damages against the debtor because the debtor's principal and manager endorsed the investments, *id.* at 120.  Those are not the facts and circumstances before this Court or considered in *PepsiCo*.  Therefore, the holding of *Wagoner* is consistent with a trustee having standing under section 544(a) to bring generalized claims of hypothetical judicial lien creditors.

Furthermore, in *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415 B.R. 29 (D. Conn. 2009) (hereinafter "*Flanagan*"), the District of Connecticut, relying on *PepsiCo*, endorsed the bankruptcy court's view that section 544(a) provides a trustee with the power to pursue "the types of claims that the Trustee, standing in the shoes of a hypothetical creditor, could have asserted," such as an alter ego claim.  *Flanagan*, 415 B.R. at 47; *see Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 373 B.R. 216, 229 (Bankr. D. Conn. 2007) ("Therefore, the essential question under Section 544(a)(2) is whether the claim that a trustee is asserting is one that an execution creditor would possess under applicable law?  At least two of the Titan Claims—the Alter Ego and Constructive Trust

_____

*First Citizens Nat'l Bank (In re Cornerstone Homes, Inc.)*, 567 B.R. 37, 52–53 (Bankr. W.D.N.Y. 2017).

Claims—are claims that an execution creditor may prosecute under Connecticut law.") While in *Flanagan* the alter ego claim brought by Titan, the trustee's assign, was determined to be barred by the *Wagoner* doctrine, the District of Connecticut did not hold that the trustee could never have brought alter ego claims under section 544(a). The issue before the District of Connecticut was that Titan did not bring its claim under section 544(a) and could no longer timely do so. 415 B.R. at 47–48. Here, the Trustee has timely brought the Second Counterclaim under section 544(a).

The HK Parties cite *Silverman ex rel. Agape World, Inc. v. Meister Seelig & Fein, LLP (In re Agape World, Inc.)*, for the proposition that "section 544 is limited to avoidance actions, and 'does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors'" in the Second Circuit. 467 B.R. 556, 574 (Bankr. E.D.N.Y. 2012) (citing *Goldin ex rel. Granite Partners, L.P. v. Primavera Familienstiftung. (In re Granite Partners, L.P.)*, 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996)). While the Court agrees that *Agape* and *Granite* hold that a trustee may not bring "personal, direct claims of creditors for the benefit of the estate" under section 544(a), the Court agrees with the District of Connecticut that under *PepsiCo*, a trustee may bring *general* claims, which a hypothetical judicial lien creditor would share, on behalf of creditors under section 544(a). *See Flanagan,* 415 B.R. at 47.

The HK Parties also cite *Harrison v. Soroof International, Inc.* for the proposition that section 544(a) cannot support an alter ego claim. 320 F. Supp. 3d 602, 612 n.10 (D. Del. 2018). While in *Harrison* the debtor-in-possession brought its action under section 544(b) – not section 544(a), *Harrison* nevertheless opines that section 544(a) cannot support an alter ego claim and

the proper basis is instead section 541.  320 F. Supp. 3d at 612 n. 10.[5]  For this proposition,

*Harrison* cites *Baillie Lumber Co., LP v. Thompson (In re Icarus Holding, LLC)*, 391 F.3d 1315,

1319 n. 4 (11th Cir. 2004), and *Mixon v. Anderson (In re Ozark Restaurant Equipment Co.)*, 816

F.2d 1222 (8th Cir. 1987), although it acknowledges the opposing view in *Koch*.  *Icarus* itself

cites *Ozark* in support of its position and disagrees with *Koch*.  *Icarus*, 391 F.3d at 1319 n. 4.

The Second Circuit in *PepsiCo*, however, discusses both *Koch* and *Ozark*, coming to a

diametrically opposite conclusion about them.  *PepsiCo*, 884 F.2d at 698–99. Therefore,

*Harrison* and *Icarus* are not persuasive.[6]

      The Court concludes that, under the clear text of section 544(a), *PepsiCo*, and *Flanagan*,

the Trustee has standing and "is the proper person to assert the [Second Counterclaim],"

*PepsiCo*, 884 F.2d at 701, because Delaware law allows outsider reverse veil-piercing.

*Manichaean*, 251 A.3d at 714.  Any judicial lien creditor could, *e.g.*, during post-judgment

proceedings, seek to levy on assets of the Individual Debtor's alter egos.  *See, e.g.*, *Reid v. Wolf*

*(In re Wolf)*, 644 B.R. 725, 748 (N.D. Ill. 2022) ("A bankruptcy trustee is empowered by section

544(a) to assert a reverse veil-piercing claim on behalf of creditors generally"); *Coan v. Manners*

---

[5] From the District of Delaware, the HK Parties additionally cite *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 611 B.R. 532, 537 (D. Del. 2019) (hereinafter "*Maxus*") for the proposition that alter ego claims are "Non-544" claims.  A review of the underlying bankruptcy court opinion in that case, however, makes clear that the "Non-544" claims were claims that were not *brought* under section 544.  *Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.)*, 597 B.R. 235, 240 (Bankr. D. Del. 2019) ("The Trust brings the fraudulent transfer claims ("544 Claims") under both state law and its 11 U.S.C. § 544 and § 550 powers as creditor-successor, but brings the other related claims ("Non-544 Claims") only under state law.") (hereinafter "*Maxus Bankruptcy*").  Here, the Trustee brings the Second Counterclaim under 11 U.S.C. § 544.

[6] The Court notes, regarding *Harrison* and *Maxus*, that in the Third Circuit certain generalized claims of creditors are property of the debtor's estate.  *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) (holding that successor liability claims were property of the estate because they are generalized rather than particularized harm to creditors and other similar claims, such as alter ego claims, are considered property of the estate.)  Thus, there is a different basis in the Third Circuit for largely the same result as under *PepsiCo* in the Second Circuit.

*(In re David X. Manners Co., Inc.)*, Case No. 15-51490 (JJT), Adv. P. No. 17-05012 (JJT), 2018 WL 6271603, at \*2 (Bankr. D. Conn. Nov. 27, 2018) ("This power [under 11 U.S.C. § 544(a)] is sufficient to give the Trustee standing to prosecute his veil-piercing claims."); *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 516 B.R. 163, 166–67 (Bankr. E.D. Ky. 2014) ("Further, by virtue of § 544, the Trustee also stands in the shoes of the Debtors' judgment creditors.  Thus, if state law allows the Debtors' judgment creditors to pierce the veil of the Debtors' limited liability company pursuant to an "outsider" reverse veil piercing theory, then the Trustee may utilize that theory as well."); *In re Archdiocese of Milwaukee*, 483 B.R. 693, 697 (Bankr. E.D. Wis. 2012) ("Using the powers granted by Bankruptcy Code § 544, a bankruptcy trustee has the right to bring an alter ego claim under Wisconsin law.").

### ii. The Third Counterclaim

As noted above, Connecticut choice of law rules apply in this Court where an action is based on state law.  *Thelen*, 736 F.3d at 219.  Under Connecticut law, the law of the governing jurisdiction of a limited liability company applies to "[t]he internal affairs of the company." Conn. Gen. Stat. § 34-275(a); *see Weber*, 924 A.2d at 822–23.  Therefore, as HK USA is a Delaware limited liability company, Delaware law governs the issue of its beneficial ownership.

Under Delaware law, "an equitable owner of [a membership interest], in a court of equity, [may pursue] an equitable remedy."  *Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945) (citing *Chadwick v. Parkhill Corp.*, 41 A. 823 (Del. Ch. 1928) (denying nominal owner's motion to intervene against beneficial owner in proceeding where beneficial owner sought to appoint a receiver)); *see, e.g.*, *Hudak v. Procek*, 806 A.2d 140 (Del. 2002) (imposing a resulting trust for the benefit of beneficial owner of a house who had overcome presumption that house was a gift to daughter); *Preston v. Allison*, 650 A.2d 646 (Del. 1994) (holding that

16

beneficial owners of stock were disenfranchised where they were required to have a particular nominee who did not vote as they directed); *Hannigan v. Italo Petroleum Corp. of Am.*, 77 A.2d 209, 213 (Del. 1949) (dismissing corporation's defense against beneficial owners of stock asserting that they were not entitled to recoup dividends paid to record owner). Therefore, the Individual Debtor owned the Third Counterclaim as of the petition date, satisfying the first component of *Wagoner*.

Therefore, the Court turns to an *in pari delicto* analysis. As the HK Parties assert, Delaware law recognizes the doctrine of *in pari delicto* and provides that a claimant "is generally barred from stating a legal or equitable claim against a third party that participated in the scheme of wrongdoing." *Stewart v. Wilmington Trust SP Services, Inc.*, 112 A.3d 271 (Del. Ch. 2015). The Trustee argues, however, that he has standing to bring the Third Counterclaim because of the insider exception to the *Wagoner* and *in pari delicto* doctrines. Delaware law recognizes an "insider" exception to the doctrine of *in pari delicto* because

> The policy goals advanced by *in pari delicto*, while important enough to outweigh this Court's interest in adjudicating breaches of contract and negligence claims at the periphery of a corporation's affairs, should not outweigh the importance of this Court's ability to adjudicate core fiduciary duty claims arising out of entities organized under Delaware law.

*Stewart*, 112 A.2d at 319.

Under the Bankruptcy Code, insiders of an individual debtor include a "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A). The Trustee clearly alleges that Ms. Guo is the Individual Debtor's daughter and that the Individual Debtor controls HK USA. Therefore, the Trustee clearly alleges that HK Parties are both statutory insiders. Ms. Guo is additionally

17

clearly alleged to be the Individual Debtor's nominee.  Assuming the allegation that Ms. Guo is the Individual Debtor's nominee is true, as the Court must when deciding a Motion to Dismiss *Hughes v. Rowe*, 449 U.S. 5, 10 (1980), this implicates her duties to the Individual Debtor, into whose shoes the Trustee has stepped.  Similarly, HK USA is clearly alleged to be beneficially owned by the Individual Debtor, implicating the Individual Debtor's alleged ownership rights and HK USA's alleged obligations to the Individual Debtor.  These are the sorts of issues the insider exception to the *in pari delicto* doctrine carves out.  *Stewart*, 112 A.2d at 319; *see Picard ex rel. Bernard L. Madoff Inv. Sec. LLC v. Madoff (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 123–25 (Bankr. S.D.N.Y. 2011) (denying motion to dismiss because it was sufficiently alleged that defendants were fiduciaries and insiders of the debtor).  It does not matter that the Individual Debtor is the principal wrongdoer in the alleged conduct.  *See Butler v. Wojtkun (In re Wojtkun)*, 534 B.R. 435, 459–60 (Bankr. D. Mass. 2015) (denying motion to dismiss because it was sufficiently alleged that a relative of the debtor, which debtor was the sole decision maker of a non-debtor corporation, and so she could not maintain an *in peri delicto* defense, where the debtor – not the relative – was the alleged wrong-doer).  Therefore, the Court agrees with the Trustee that the insider exception to the *in pari delicto* doctrine applies and the Trustee has standing to bring the Third Counterclaim under *Wagoner*.

The Trustee also argues that the Third Counterclaim may be brought under section 544(a).  Much like an alter ego claim, this claim is the sort of general, non-particularized claim a hypothetical judgment lien creditor could bring in seeking to find assets to satisfy its judgment debt.  *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997) (determining whether an owner was a nominee for the purposes of tax levy), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *see Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R.

553, 558 (Bankr. N.D. Ill. 2021) (using common law nominee factors in a bankruptcy proceeding).  Therefore, for the reasons stated above, the Court agrees with the Trustee that he also has standing to bring the Third Counterclaim as a hypothetical judgment lien creditor.

### iii.  The Fifth Counterclaim

Bankruptcy courts generally apply forum state choice of law rules for issues of state law. *Thelen*, 736 F.3d at 219.  Connecticut applies the Second Restatement significant relationship test on tort claims. *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 153 A.3d 574, 584 (Conn. 2016); *Jaiguay v. Vasquez*, 948 A.2d 955, 972 (Conn. 2008) ("[W]e have moved away from the place of the injury rule for tort actions and adopted the most significant relationship test . . ..")*; see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6 & 145.  Upon application of the Second Restatement factors, the Court finds that New York has the most significant relationship to the alleged tort.  In particular, the contempt fines accrued in relation to a New York judgment, the Individual Debtor and Ms. Guo allegedly resided in New York, and although incorporated in Delaware, HK USA has, at pertinent times, used a New York address. Moreover, the HK Parties agree with the Trustee that New York law applies to the Trustee's negligence claim against HK USA.  *See American Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) (". . . where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry . . ..").

The elements of a negligence claim under New York law are "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of New York.*, 489 N.E.2d 1294, 1294 (N.Y. 1985).  The Trustee asserts that HK USA owed the Individual Debtor a duty, which it violated by removing the Lady May from the jurisdiction of the New York court, and that the Individual Debtor suffered

contempt fines proximately therefrom. The Individual Debtor owned this action as of the petition date. Therefore, the first component of *Wagoner* is satisfied.

As to the second component, New York law recognizes the doctrine of *in pari delicto*. *Kirschner*, 938 N.E.2d at 950. The HK Parties argue that the Trustee cannot recover for negligence from the alleged co-conspirators in the Individual Debtor allegedly willful contempt of court. In response, the Trustee asserts that the HK Parties misunderstand the Fifth Counterclaim. The Trustee argues that the Fifth Counterclaim alleges in the alternative that HK USA is neither the alter ego of the Individual Debtor nor beneficially owned by the Individual Debtor. Therefore, the Fifth Counterclaim, the Trustee contends, is premised on HK USA acting independently of the Individual Debtor, rather than being premised upon HK USA acting as the Individual Debtor's co-conspirator. Hence, the Trustee argues, *in pari delicto* does not apply. Alternatively, the Trustee argues that the adverse interest exception to the doctrine of *in pari delicto* applies.

The Court agrees with the Trustee that, as he has pled the Fifth Counterclaim, *in pari delicto* does not apply. The Fifth Counterclaim is pled in the alternative and asserts the Individual Debtor was involved with no wrongdoing *vis-à-vis* the contempt order in the New York court. Nevertheless, if the *in pari delicto* doctrine were to apply, New York law recognizes the adverse interest exception to the *in pari delicto* doctrine, although "for the adverse interest exception to apply, the agent 'must have totally abandoned his principal's interests and be acting entirely for his own or another's purposes,' not the corporation's." *Id.* at 953. The Court finds that the Trustee clearly alleges in the Fifth Counterclaim that the Lady May was not removed from the jurisdiction of the New York court in furtherance of the Individual Debtor's alleged

"shell game," but rather by the decision of the HK Parties *despite* knowing that the Individual

Debtor was facing enormous potential contempt sanctions.

Therefore, for the reasons stated above, the Court denies the Motion to Dismiss the

Second, Third, and Fifth Counterclaims under Fed. R. Civ. P. 12(b)(1).

## B.  Failure to State a Claim

In determining whether the Second, Third, and Fifth Counterclaims state a claim upon

which relief may be granted, the Court must take the well-pleaded allegations of the

Counterclaims, including those in documents attached to the complaint, as true.  *See Hughes*, 449

U.S. at 10; *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 208 (2d Cir. 2012); *Chambers v.

Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Tatum v. Oberg*, 650 F. Supp. 2d 185,

189 (D. Conn. 2009).  The Court must also consider "matters of which a court may take judicial

notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The Court must

draw all reasonable inferences in the Trustee's favor.  *Warren v. Colvin*, 744 F.3d 841, 843 (2d

Cir. 2014).

Under Fed. R. Civ. P. 8(a), made applicable by Fed. R. Bankr. P. 7008, the

Counterclaims must plead "sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 570 (2007)).  The "plausibility standard," while not a "'probability

requirement,'" requires more than "sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining the plausibility of a claim

is "a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Iqbal*, 556 U.S. at 679.  Nevertheless, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

### i. The Second and Third Counterclaims

The HK Parties argue that the Second Counterclaim should be dismissed because it seeks turnover of the Escrowed Funds described in the Stipulated Delivery Order.  The Stipulated Delivery Order provides in pertinent part that the Individual Debtor (among others)

> shall not take any act to assert, create, perfect or enforce any right, title, lien or other interest in the [Escrowed Funds] while in the possession of the Escrow Agent or their proceeds while in the possession of HK USA or any other person, including, but not limited to, through the enforcement of any judgment or service of any prejudgment remedy or other legal process

(ECF No. 299 ¶ 12.)  The HK Parties argue that the Trustee is bound by the Stipulated Delivery Order and, in particular, paragraph 12, because he has stepped into the shoes of the Individual Debtor upon his appointment.  During the hearing, the HK Parties made this same argument with regard to the Third Counterclaim.  The Trustee disagrees and argues that, on the instant facts, the Stipulated Delivery Order does not bind him because (i) the Second Counterclaim seeks a declaration that the Escrowed Funds were always property of the Estate and (ii) the Third Counterclaim seeks the transfer of the membership interest in HK USA – not the escrowed funds.  The Trustee additionally argues that, while a trustee is generally bound by the actions of a former debtor-in-possession, there are circumstances, where, as here, the general rule does not apply because equitable considerations favor not binding the trustee to a debtor-in-possession's bargain.

The Court finds the Trustee's first argument persuasive as to the Third Counterclaim.  It plausibly alleges a claim seeking delivery of Ms. Guo's membership interest in HK USA – not the Escrowed Funds – to the Trustee.  However, at this stage of the adversary proceeding, the Court is not persuaded by the Trustee's first argument as it applies to the Second Counterclaim, because on its face, it seeks delivery of the Escrowed Funds.  This is not reason enough to

dismiss the Second Counterclaim because the Court must also consider the Trustee's additional argument, which he asserts creates an independent basis to allow the Estate to recover from the Escrowed Funds.

As to this additional argument, namely, that equitable considerations favor an exception to the general rule, Second Circuit precedent holds that whether a trustee is bound by a former debtor-in-possession's stipulation is a question of equity.[7] In *Feldman v. Trans-East Air, Inc.*, the Second Circuit, in a case under the former Bankruptcy Act, held upon a determination of the

---

[7] Second Circuit jurisprudence is in accord with the law of its sister circuits, which the parties have cited. In *Armstrong v. Norwest Bank, Minneapolis, N.A.*, the Eighth Circuit held that "it is axiomatic that the Trustee is bound by the acts of the debtor-in-possession" on the basis that "Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee." 964 F.2d 797, 801 (8th Cir. 1992). In that case, a Chapter 7 trustee sought to undo a stipulation between a former debtor-in-possession regarding the use of cash collateral. *Armstrong*, 964 F.2d at 799–801.

In *In re Superior Toy & Mfg. Co., Inc.*, the Seventh Circuit did not allow a Chapter 7 trustee to reconsider whether to assume a previously assumed contract in the Chapter 7 context and foreclosed preference litigation on the cure payments involved in the assumption of the contract. 78 F.3d 1169, 1173–75 (7th Cir. 1996). The Seventh Circuit noted, however, that "[f]raud by a party, or the intentional concealing of information from the court so as to improperly obtain an assumption order, is a very different matter." *Superior Toy*, 78 F.3d at 1175. Finally, the Seventh Circuit concluded that, as a matter of equity,

> The bankruptcy estate benefitted from the contract for almost two years. The trustee cannot now come forward and argue that the contract is not executory and that the payments to Playtex should be returned. To hold otherwise, without some allegation of improper conduct by the parties, would be unfairly prejudicial to Playtex.

*Id.* at 1176.

In *Seidle v. GATX Leasing Corp.*, the Eleventh Circuit held that a Chapter 11 trustee could not seek to recover alleged preference payments to a creditor where the former debtor-in-possession had entered into a stipulation with the creditor pursuant to 11 U.S.C. § 1110. 778 F.2d 659, 663–66 (11th Cir. 1985). In support of this ruling, the Eleventh Circuit noted that it had previously held that in the same Chapter 11 case "'equity demands that GATX not suffer a penalty for having voluntarily entered into a post-petition section 1110 agreement with Airlift.'" *Seidle*, 778 F.2d at 665 (internal citations omitted).

equities that a trustee was bound by the former debtor-in-possession's rejection of airplane leases

because

> In this case appellees changed their position in reasonable reliance on the rejection of the contracts. They properly understood the order of September 8 to require them to take the planes and to attempt to mitigate damages by finding a new lessee. However, demand for the aircraft was very low. As the district court found, appellees expended considerable amounts of money, time, and effort to re-lease the planes, and these efforts plus appellees' expertise were largely responsible for the favorable leases eventually obtained.
>
> Appellees had a right to rely on the order of disaffirmance. The debtor requested it, the court approved it, and no other party opposed it. For sixteen months neither the debtor nor the trustee objected to appellees' actions.

497 F.2d 352, 355 (2d Cir. 1974). The Second Circuit noted there was no allegation of "fraud or

bad faith by any party." *Feldman*, 497 F.2d at 356. Similarly, in *E. Air Lines, Inc. v. Ins. Co. (In*

*re Ionoshpere Clubs)*, the Second Circuit held, making a determination of the equities, that a

Chapter 11 trustee was bound by debtor's obligations under an insurance plan where

> Promising to perform its obligations under the Plan with only the payment schedule altered, and remaining silent as to the contentions advanced in this litigation that it had not adequately given its consent to the 1.6 multiplier provided by the Plan, that that multiplier was unenforceable, and hence that its maximum premium should be less than the amount called for by the Plan, [the debtor] persuaded [the insurer] to agree to a relaxed premium payment schedule and to continue to provide insurance coverage.

85 F.3d 992, 1001 (2d Cir. 1996). The Second Circuit also noted, *inter alia*, that the debtor made

"no effort whatever to alter the formula for computing the maximum premium; according to

McGuinness, that question was not even discussed" and that allowing the trustee to alter the

insurance plan would cause the insurer "substantial prejudice." *Ionosphere*, 85 F.3d at 1001.

The Court finds *Begier v. Am. Express, Inc. (In re Am. Int'l Airways, Inc.)*, 75 B.R. 1023

(Bankr. E.D. Penn. 1987) (hereinafter "*Am. Int'l Airways II*") particularly instructive at the

motion to dismiss stage of this adversary proceeding. In *Am. Int'l Airways II*, the bankruptcy

court had previously declined to dismiss the Chapter 11 trustee's preference action on account of

24

a stipulation entered into by the former debtor-in-possession, providing the trustee time to

provide evidence that

> "the specific intentions of the parties to bar or not to bar a Trustee from pursuit of
> preference actions against the Defendant at the time of the execution of the Stipulation,"
> or "as to whether equitable considerations support either the conclusion that the Trustee
> should be precluded from pursuing preference actions against the Defendant or the
> conclusion that no equitable reasons for relieving the Trustee from such a preclusion"
> were present.

75 B.R. at 1024.  Ultimately the trustee failed to provide such evidence and the bankruptcy court

dismissed the trustee's preference action.  *Am. Int'l Airways II*, 75 B.R. at 1024.  In the prior

opinion, the bankruptcy court stated that in determining whether to hold a Chapter 11 trustee to

the stipulation of a former debtor-in-possession required a consideration, on the one hand, of the

facts and circumstances leading to the appointment of a Chapter 11 trustee, such as fraud,

dishonesty, or gross mismanagement, and whether those facts and circumstances implicate the

stipulation; and, on the other hand, the ability of a debtor-in-possession to come to agreement

with third parties without the possibility a Chapter 7 or 11 trustee may undo the agreement.

*Begier v. Am. Express, Inc. (In re Am. Int'l Airways, Inc.)*, 74 B.R. 691, 694 (Bankr. E.D. Penn.

1987) (hereinafter "*Am. Int'l Airways I*").

The Court concludes that on the present facts and circumstances, the Trustee has stated a

plausible claim that the Stipulated Delivery Order does not bar him from seeking the Escrowed

Funds.  First, here, unlike in *Armstrong*, *Superior Toy*, and *Seidle*, neither HK USA nor Ms. Guo,

the parties against whom relief is sought, is a creditor.[8]  Therefore, allowing the Trustee to seek

the Escrowed Funds despite the terms of the Stipulated Delivery Order would not implicate the

---

[8]  While the HK Parties point to the fact that certain creditors were parties to the Stipulated
Delivery Order, the Trustee is not seeking relief against such creditors.

policy concern that creditors must be comfortable in coming to agreements with debtors-in-possession. *See, e.g.*, *Armstrong*, 964 F.2d at 801.

Second, the Second and Third Counterclaims allege that HK USA is the alter ego of the Individual Debtor or is beneficially owned and controlled by the Individual Debtor, respectively. As the Trustee observes, the HK Parties do not argue that the merits of the Second or Third Counterclaim are not plausibly alleged. If Court were to find in the Trustee's favor on the merits of the alter ego claim or beneficial ownership claim, allowing the Trustee to recover from the Escrowed Funds would not implicate any prejudice to HK USA because the Court would have found that HK USA is the Individual Debtor or is owned or controlled by the Individual Debtor. *See, e.g.*, *Ionosphere*, 85 F.3d at 1001; *Superior Toy*, 78 F.3d at 1176; *Seidle*, 778 F.2d at 665; *Feldman*, 497 F.2d at 355. There is no public policy interest in allowing an Individual Debtor to self-deal in bankruptcy to shield assets from bankruptcy proceedings. *See In re Alma Energy, LLC*, No. CIV. 10-80-ART, 2010 WL 4736905 (E.D. Ky. Nov. 16, 2010); *Coan v. Licata (In re First Conn. Consulting Grp.)*, Case No. 02-50852 (JJT), Case No. 02-51167 (JJT), Adv. P. No. 09-05010 (JJT), 2023 WL 2746826 (Bankr. D. Conn. Mar. 31, 2023); *Coan v. Licata (In re First Conn. Consulting Grp.)*, Case No. 02-50852 (JJT), Case No. 02-51167 (JJT), Adv. P. No. 09-05010 (JJT), 2023 WL 2752489 (Bankr. D. Conn. Mar. 31, 2023).

Third, the Trustee was appointed in part because of allegations that the Individual Debtor is engaged in shell games to hinder, delay, and defraud his creditors. The Second Counterclaim asserts such allegations. *See Am. Int'l Airways I*, 74 B.R. at 694. Piercing the corporate veil "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved." *Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del.

1968).  The same is true of the Third Counterclaim, which is brought by the Trustee under

section 544(a).  *See Libutti*, 968 F. Supp. at 75.  Therefore, there are allegations of "fraud or bad

faith."  *Feldman*, 497 F.2d at 356; *see Superior Toy*, 78 F.3d at 1175; *Am. Int'l Airways I*, 74

B.R. at 694.  The proof for the alter ego claim or the beneficial ownership claim and the claim

that the Trustee is not bound by the Stipulated Delivery Order may be substantially the same.

Fourth, unlike in *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, the

Stipulated Delivery Order here does not expressly bind the Trustee, despite the pendency at that

time of a motion to appoint a Chapter 11 trustee.  644 B.R. 418, 427–28 (Bankr. S.D.N.Y. 2022);

*see Phila. Athletic*, 17 B.R. at 347.  For all these reasons, the Court finds that the Trustee has

plausibly pled that he is not bound by the Stipulated Delivery Order.  *See Am. Int'l Airways I*, 74

B.R. at 694.

Taking the plausibly pled allegations of the Second and Third Counterclaims as true, the

Court cannot at this time find that the Trustee cannot recover the Escrowed Funds.

### ii. The Fifth Counterclaim

The HK Parties argue that the Fifth Counterclaim should be dismissed because HK USA

had no duty to the Individual Debtor to prevent the accrual of fines for willful contempt of court,

and therefore, HK USA cannot be liable for negligence.  The HK Parties also argue the Final

Contempt Decision is an intervening cause cutting off proximate causation.  Additionally, the

HK Parties argue that if the Individual Debtor has recourse against HK USA, it is through

contempt proceedings in the New York court.  The Trustee counters and argues that HK USA

violated its general duty to exercise ordinary care and skill to refrain from injuring others and

that the violation caused the Individual Debtor's injury.  The Trustee additionally argues that

27

contempt proceedings would not be appropriate because the Fifth Counterclaim is arguing that HK USA and the Individual Debtor were *not* co-conspirators.

The Court finds that the Trustee has plausibly alleged that HK USA violated its general duty of care to the Individual Debtor when it knowingly removed the Lady May from the jurisdictional waters of the United States despite a clear order and knowingly persisted in this activity despite the contempt fines the Individual Debtor was accruing.  The Court cannot at this stage in the adversary proceeding hold that no duty and no proximate causation exists.

Therefore, for the reasons stated above, the Court denies the Motion to Dismiss with respect to the Second, Third, and Fifth Counterclaims under Fed. R. Civ. P. 12(b)(6).

## V.  CONCLUSION & ORDER

For the reasons stated above, it is hereby

**ORDERED:**  The Motion to Dismiss is **DENIED IN PART** as set forth herein.  The Motion to Dismiss is denied as to the Second, Third, and Fifth Counterclaims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7012.  The Court will rule on the dismissal of the Fourth Counterclaim if and when it is again ripe.

Dated at Bridgeport, Connecticut this 14th day of April, 2023.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut

28