**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 22-50073 (JAM)<br>(Jointly Administered) |
| HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC,<br><br>Plaintiff<br><br>v.<br><br>LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>Defendant. | Adv. P. No. 22-05003 (JAM)<br><br>Re: ECF Nos. 36 and 185 |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>Counter-Plaintiff<br><br>v.<br><br>HK INTERNATIONAL FUNDS INVESTMENTS (USA) LIMITED, LLC, and MEI GUO,<br><br>Counter-Defendants. | |

**APPEARANCES**

Luc A. Despins
Avram E. Luft
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

Douglass S. Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

and

Nicholas A. Bassett (argued)
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counter-Plaintiff Luc A. Despins, Chapter 11 Trustee for the Estate of Ho Wan Kwok, and Counsel*

Lee Vartan
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052

and

Sam Della Fera, Jr.
Melissa F. Wernick (argued)
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068

Aaron Romney
John L. Cesaroni
James M. Moriarty
Zeisler & Zeisler, P.C.
10 Middle Street
Bridgeport, CT 06604

*Counsel for Counter-Defendants HK International Funds Investments (USA) Limited, LLC, and Mei Guo*

**MEMORANDUM OF DECISION AND ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT ON SECOND COUNTERCLAIM**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is the Motion for Partial Summary Judgment on Second Counterclaim (ECF No. 185,[1] the "Motion for Summary Judgment") of the Counter-Plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual Debtor"). The Trustee filed several counterclaims against the Counter-Defendants HK International Funds Investments (USA) Ltd.,

[1] References to the docket in this adversary proceeding will be styled "ECF." References to the docket in the main case, *In re Kwok*, Case No. 22-50073, will be styled "Main Case ECF."

LLC ("HK USA") and Ms. Mei Guo (together with HK USA, collectively, the "HK Parties"). (ECF No. 36, the "Answer and Counterclaims" and, in pertinent part, the "Counterclaims.") Ms. Guo is the Individual Debtor's daughter and the sole member of HK USA. Pursuant to 11 U.S.C. §§ 541, 542, and 544, the Trustee's Second Counterclaim seeks: (i) a declaratory judgment that HK USA is the alter ego of the Individual Debtor; and (ii) an order requiring the HK Parties to deliver the property of HK USA to the Trustee. For the reasons stated below the Motion for Summary Judgment is **GRANTED**.

## II. BACKGROUND[2]

The Individual Debtor filed a voluntary Chapter 11 petition in this Court on February 15, 2022. (Main Case ECF No. 1.) The Individual Debtor's case is jointly administered with two affiliated corporate Chapter 11 cases. (Main Case ECF Nos. 970 and 1141.) Among early developments in the Individual Debtor's Chapter 11 case, the Office of the United States Trustee ("UST") filed a motion to appoint either an examiner or a Chapter 11 trustee (Main Case ECF No. 102) and creditor Pacific Alliance Asia Opportunity Fund L.P. ("PAX") filed a motion to dismiss or appoint a Chapter 11 trustee (Main Case ECF No. 183). For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

---

[2] Much of the procedural background contained herein appears either in the March 30th Supplemental Memorandum of Decision in Support of Oral Ruling Granting Motion for Partial Summary Judgment on the First Counterclaim (ECF No. 177, the "Collateral Estoppel SJ Decision") or the April 14th Memorandum of Decision and Order Denying in Part the Motion to Dismiss (ECF No. 202, the "Decision Denying Dismissal"). At the risk of repetition, the procedural background contained in this decision includes some differences that are significant to this decision.

When the Individual Debtor filed his Chapter 11 petition, PAX and the Individual Debtor were engaged in post-judgment litigation in the New York state courts. *See, generally*, *Pac. All. Asia Opportunity Fund, L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022) (the "New York Action"). On March 1, 2022, PAX filed a motion in the Individual Debtor's Chapter 11 case seeking to confirm the inapplicability of the automatic stay or, alternatively, relief from the automatic stay. (Main Case ECF No. 57, the "Stay Relief Motion.") In the Stay Relief Motion, PAX sought to pursue the enforcement of prior rulings in the New York Action, including the Decision & Order, *Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022), NYCEF No. 1181 (the "Final Contempt Decision") and to compel the return of the pleasure yacht Lady May to New York's navigable waters. (Main Case ECF No. 57.)

On April 10, 2022, the Individual Debtor filed a Chapter 11 Plan of Reorganization (ECF No. 197, the "Plan"). Among other things, the Plan provided that the Lady May would be transferred to a trust created for the benefit of the Individual Debtor's creditors. The very next day, April 11, 2022, HK USA filed an appearance in the Individual Debtor's Chapter 11 case and filed a statement with regard to the Stay Relief Motion. (Main Case ECF Nos. 201–03.) During a hearing held before the Court on April 27, 2022, the parties agreed to resolve the Stay Relief Motion. On April 29, 2022, the Court entered a stipulated order, which, *inter alia*, compelled HK USA to deliver the Lady May to the navigable waters of Connecticut on or before July 15, 2022. (Main Case ECF No. 299, the "Stipulated Delivery Order.")[3]

[3] The Lady May was timely delivered to the navigable waters of Connecticut. (*See* Main Case ECF No. 723.)

Pursuant to the terms of the Stipulated Delivery Order, HK USA placed $37 million into an escrow account to secure its delivery obligation. (Main Case ECF No. 299.) Through a subsequent consent order, a $4 million repair reserve was created from the escrowed funds. (Main Case ECF No. 930.) The repair reserve funds are to be used to complete planned repairs to the Lady May. Through additional consent orders, certain other costs related to the Lady May are to be paid from the repair reserve. (Main Case ECF Nos. 1255, 1377, 1608, 1673.) The repair reserve is held in escrow by the Trustee (all remaining funds in the repair reserve coupled with the $33 million remaining in the original escrowed funds are, collectively, the "Escrowed Funds").

On the day HK USA appeared in the Individual Debtor's case, it also filed a complaint against the Individual Debtor and PAX,[4] initiating the instant adversary proceeding. (ECF No. 1, the "Complaint.") The Complaint seeks a declaratory judgment that the Lady May is property of HK USA – not the Individual Debtor – and, therefore, is not property of the Individual Debtor's Estate. On September 23, 2022, the Trustee, having stepped into the Individual Debtor's shoes as a defendant in this adversary proceeding, filed his Answer and Counterclaims. (ECF No. 36.) On October 4, 2022, a summons issued which included Ms. Guo as a counter-defendant. (ECF No. 43.) On December 22, 2022, the HK Parties filed the Motion to Dismiss Counterclaims, which implicated the Second Counterclaim. (ECF No. 87, the "Motion to Dismiss.") On April 14, 2023, the Court issued its Decision Denying Dismissal. (ECF No. 202.) In pertinent part, the Decision Denying Dismissal held that the Trustee sufficiently alleged that he has standing to

---

[4] On August 26, 2022, HK USA voluntarily dismissed the complaint against PAX. (ECF No. 30.)

bring the Second Counterclaim and that he could recover the Escrowed Funds because he is not bound by the Stipulated Delivery Order.

On March 15, 2023, an evidentiary hearing was held on the Trustee's Application for Pre-judgment Remedy (ECF No. 37) and Motion for Preliminary Injunction (ECF No. 50), which collectively sought to prevent the dissipation of assets pending an adjudication on the merits of the Counterclaims. Before the conclusion of the evidentiary hearing, the HK Parties consented to entry of a pre-judgment remedy (ECF No. 140, the "PJR") and a preliminary injunction (ECF No. 142, the "PI," and together with the PJR, collectively the "PI/PJR"). Prior to the entry of the PI/PJR, the parties' arguments regarding the Counterclaims – including the Second Counterclaim – had been fully briefed between September 23, 2022, and March 8, 2023, in anticipation of the evidentiary hearing. (ECF Nos. 37, 38, 50, 77, 101.)

On March 27, 2023, for the reasons stated on the record and in the subsequent supplemental memorandum of decision, the Court granted the Trustee partial summary judgment on the First Counterclaim. (ECF Nos. 172, the "Collateral Estoppel SJ Order" and 177.) The First Counterclaim sought a declaratory judgment that the Lady May was property of the Individual Debtor's Estate because the Final Contempt Decision collaterally estopped the HK Parties from arguing otherwise. The First Counterclaim further sought an order requiring the HK Parties to deliver the Lady May to the Trustee. The Collateral Estoppel SJ Order granted the Trustee the relief he requested and explicitly preserved the litigation on the Second Counterclaim. (ECF No. 172 ¶ 7.)

During a Status Conference held on March 30, 2023, the Trustee informed the Court that after the entry of the PI/PJR and Collateral Estoppel SJ Order, he learned for the first time that HK USA owned another yacht in addition to the Lady May—the Lady May II. The Trustee

learned of this fact during discussions with the management company for both the Lady May and the Lady May II. He expressed his concern about this development because (i) Ms. Guo and HK USA failed to disclose the Lady May II in previous sworn statements to the Court and pursuant to the disclosure requirements of the PI/PJR; (ii) Ms. Guo recently asserted her fifth amendment rights in relation to the disclosure requirements of the PI/PJR; and (iii) Ms. Guo testified during the New York Action that her brother, Mr. Qiang Guo, owned the Lady May II. Consistent with his concerns regarding non-disclosure of the Lady May II, the Trustee alerted the Court and the HK Parties that he intended to file the instant Motion for Summary Judgment.

In response, counsel for the HK Parties represented that they, collectively, had misunderstood what the Lady May II was, thinking it resided inside the Lady May and was part of the Lady May. They also represented that they had not intended to deceive the Trustee or the Court. Counsel for the HK Parties referred the Court to its prior disclosure of the Lady May II in an email to PAX and the Official Committee of Unsecured Creditors (the "Committee") in connection with providing proof of insurance as required by the Stipulated Delivery Order. Counsel for the HK Parties additionally represented that the Lady May II is referenced on the docket of the Individual Debtor's case in an exhibit the HK Parties had previously filed which contained an insurance premium for the Lady May and Lady May II as a budget line item. (Main Case ECF No. 1216.) The HK Parties then proffered and consented to an amendment to the Collateral Estoppel SJ Order to extend the relief granted to the Lady May II. (ECF No. 183, the "Collateral Estoppel SJ Order Amendment," and, together with the Collateral Estoppel SJ Order, collectively, the "Amended Collateral Estoppel SJ Order.") After the Status Conference, the HK Parties filed the email that was sent to PAX and the Committee on the docket of the

Individual Debtor's case which had attached to it an insurance policy for the Lady May and Lady May II. (Main Case ECF No. 1623.)

On April 3, 2023, the Trustee filed (i) the Motion for Summary Judgment; (ii) a Memorandum of Law in Support of the Motion for Summary Judgment (ECF No. 186); (iii) a Local Rule 56(a)(1) Statement of Undisputed Material Facts (ECF No. 187, the "56(a)(1) Statement"); (iv) a Declaration of Nicholas A. Bassett (ECF No. 188, the "Bassett Declaration") with attached exhibits in support of the 56(a)(1) Statement; and (v) a Motion to Expedite Hearing on the Motion for Summary Judgment (ECF No. 189, the "Motion to Expedite"). On April 4, 2023, the Motion to Expedite was granted over the objection of the HK Parties (ECF No. 190), setting the hearing on the Motion for Summary Judgment for April 20, 2023 (ECF No. 191).

On April 14, 2023, HK USA filed (a) a Memorandum of Law in response to the Motion for Summary Judgment (ECF No. 203); and (b) a Local Rule 56(a)(2) Statement of Facts in Opposition (ECF No. 204, the "56(a)(2) Statement," and, together with the 56(a)(1) Statement, collectively, the "Rule 56(a) Statements"). Notably, Ms. Guo did not file a response to the Motion for Summary Judgment. On April 18, 2023, the Trustee filed a reply to the HK Memo. (ECF No. 209.) Attached to the reply is one exhibit, the full transcript of Ms. Guo's deposition, specific excerpts of which are attached to the Bassett Declaration.

On April 20, 2023, a hearing was held on the Motion for Summary Judgment. The motion is ripe for decision.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District

Court for the District of Connecticut dated September 21, 1984. The instant proceedings are statutorily core proceedings. 28 U.S.C. § 157(b)(2)(A), (C), (E). The Second Counterclaim implicates no constitutional concerns precluding this Court's exercise of jurisdiction. *Cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

Furthermore, as set forth in the Decision Denying Dismissal and incorporated by reference herein,[5] the Court concludes that, pursuant to section 544(a), the Trustee has standing to bring the Second Counterclaim because, *e.g.*, a hypothetical judicial lien creditor could bring a reverse veil-piercing claim under Delaware law.[6] *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 714 (Del. Ch. 2021) (holding Delaware law recognizes outsider reverse veil-piercing); *see St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) (holding a bankruptcy trustee has standing to bring alter ego claims either on behalf of the debtor or creditors); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987) (holding a bankruptcy trustee has standing to bring alter ego claims under section 544(a)); *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415 B.R. 29 (D. Conn. 2009) (observing that plaintiff failed to bring alter ego claim under section 544(a) and could no longer timely do so but that section 544(a) could have provided standing for such a claim).

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. UNDISPUTED FACTS

The Court incorporates herein by reference the Undisputed Facts in the Collateral Estoppel SJ Decision. In connection with the Trustee's alter ego claim and HK USA's equitable

---

[5] Pursuant to Fed. R. Civ. P. 54, made applicable in this adversary proceeding by Fed. R. Bankr. P. 7054, it is within the Court's discretion whether the Decision Denying Dismissal is the law of the case. *Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021).

[6] *See* Discussion, *infra* (holding that Delaware law applies to the Second Counterclaim).

defense of promissory estoppel, the Court additionally enumerates the following undisputed facts based on the record of these Chapter 11 cases; the Bassett Declaration and attached exhibits; and the Rule 56(a) Statements:

1. A creditor of the Individual Debtor has existed since at least 2015. (*In re Kwok*, Case No. 22-50073, Claim 12-2.)

***Creation of HK USA, its assets, and its business purpose***

2. On or about September 11, 2018, a certificate of formation was filed with the State of Delaware, Secretary of State, Division of Corporations, on behalf of HK USA. (Bassett Decl. Ex. 1.)

3. Subsequently, on or about April 1, 2019, HK USA and Ms. Guo – HK USA's sole member – executed a limited liability company agreement (the "LLC Agreement") identifying Ms. Guo as HK USA's sole member. (*Id.* Ex. 2.)

4. The LLC Agreement lists Ms. Guo's address as 781 5th Avenue, the Sherry Netherland Apartment, New York, New York 10022, where the Individual Debtor has, at times, resided. (*Id.* Ex. 2, at *2.)

5. The LLC Agreement also lists the principal office of HK USA as 162 East 64th Street, New York, New York 10065. (*Id.* Ex. 2, at *1.) HK USA's principal office address is the same address listed by the Individual Debtor on his original and amended petitions, (Main Case ECF Nos. 1 and 19), and the same address as used by Greenwich Land LLC, (Bassett Decl. Ex. 3), Golden Spring (New York) Ltd., (Main Case ECF No. 767), GTV Media Group Inc., (Bassett Decl. Ex. 4), and Saraca Media Group Inc., (*id.* Ex. 5). It was also, for a time, the address of one of the Individual Debtor's counsel, Lawall & Mitchell, LLC. (*Id.* Ex. 6.)

6. On or about April 17, 2020, HK International Funds Investments Ltd. ("HK International"), the previous record owner of the Lady May, transferred record ownership of the Lady May to HK USA. Accordingly, HK USA was the record owner of the Lady May from April 17, 2020, forward. (Complaint ¶¶ 2 and 23.)

7. During the entire time period relevant to the Second Counterclaim, HK USA: (i) has generated no revenue, (*id.* ¶ 24; Bassett Decl. Exs. 8 and 9); (ii) had no directors, officers, or employees, (Bassett Decl. Ex. 9, at 1); (iii) has not filed tax returns, (*id.* Ex. 9, at 1); (iv) had no bank account and had not otherwise been capitalized, (Complaint ¶ 24; Bassett Decl. Ex. 9, at 1); and (v) maintained no documents other than those relating to the Lady May, (Decl. of Mei Guo ¶ 25, Main Case ECF No. 1544).

8. The Lady May's operating expenses exceed $100,000.00 per month. (Motion to Modify Repair Reserve Consent Order ¶ 16 (the "HK Motion to Modify"), Main Case ECF No. 1216.)

9. The HK Parties and their counsel have repeatedly stated, including under the penalty of perjury, that HK USA's only asset is the Lady May. For example, during an April 13, 2022, hearing before the Court, counsel to HK USA represented that "my client's sole asset is the boat." (Bassett Decl. Ex. 10, at *51:17–18.) Attorney Vartan made the same representation in a letter to the Trustee's counsel dated March 27, 2023. (Bassett Decl. Ex. 11.) Ms. Guo has made the same representation under penalty of perjury, both in a declaration submitted to this Court on March 13, 2023, (Decl. of Mei Guo ¶ 24, Main Case ECF No. 1544), and in her January 20, 2023, deposition, (Bassett Decl. Ex. 12, at *140:2–7). In February 2022, at a hearing on PAX's Final Contempt Motion, as defined in the Collateral Estoppel SJ Decision, in the New York Action, Ms. Guo testified under oath, upon seeing a video depicting the Lady May II, that her

brother owned the Lady May II. (*Id.* Ex. 17, at *71:20–72:9.) During a discovery dispute in this case, instead of acknowledging that HK USA owned the Lady May II, Ms. Guo's counsel took the position that if a Lady May II hypothetically existed, HK USA would not produce documents concerning it. (*Id.* Ex. 18, at *66:14–67:11.)

10. Pursuant to the Collateral Estoppel SJ Order, the Trustee became the sole owner of the Lady May for the benefit of the Individual Debtor's Estate. (Collateral Estoppel SJ Order.)

11. On March 29, 2023, the management company for the Lady May: (i) produced to the Trustee the registry of the Lady May II, which registry states HK USA is the record owner of the Lady May II, (Bassett Decl. Ex. 13); and (ii) informed the Trustee that the Lady May II is currently located in a storage facility in Mamaroneck, New York.

12. On March 31, 2023, with the consent of the HK Parties, the Court entered the Collateral Estoppel SJ Order Amendment confirming that the Lady May II is also property of the Individual Debtor's Estate. Therefore, the HK Parties admit that the Individual Debtor's Estate now owns and controls all of the assets that they contend HK USA has ever owned.

13. Ms. Guo is the signatory to contracts involving the Lady May, namely, a contract with Phoenix Crew IC Limited and various nondisclosure agreements with crewmembers. (Bassett Decl. Ex. 19.)

14. Ms. Guo signed a personal guarantee (the "Personal Guarantee") regarding the loan of the $37 million which became the Escrowed Funds. The Personal Guarantee is undated but states it is effective as of April 19, 2022. The Personal Guarantee is not witnessed, counter-signed, or notarized. (ECF No. 84 Ex. C.)

***Circumstances surrounding the Stipulated Delivery Order***

15. On March 1, 2022, PAX filed the Stay Relief Motion. (Main Case ECF No. 57.)

16. The Individual Debtor filed an objection to the Stay Relief Motion arguing, *inter alia*, that he did not own or control the Lady May. (Main Case ECF No. 83.)

17. On April 10, 2022, the Individual Debtor filed the Plan, which provided for the liquidation of the Lady May for the benefit of the Individual Debtor's creditors and releases of, *inter alia*, HK USA. (Main Case ECF No. 197 Arts. I § A ¶¶ 13–16, 28–32, 74, 88–91, III, IV § B, IX.)

18. On April 11, 2022, HK USA filed a statement asserting that the entry of a proposed order compelling HK USA to transport and deliver the Lady May to Connecticut would moot the Stay Relief Motion. (Main Case ECF No. 203.) HK USA also stated that it would consent to the entry of such an order and to the jurisdiction of this Court. (*Id.*)

19. On April 13, 2022, a hearing was held on several matters in the Individual Debtor's case, including the Stay Relief Motion. During the hearing, the Court asked HK USA's counsel a number of questions regarding HK USA's proposal concerning the Lady May, including "Why don't you just do this? If you really want to do this, why don't you just post a bond? Why don't you just post a bond for $134 million?" (Bassett Decl. Ex. 10, at *51:7–9.)

20. Thereafter, following a 62-minute recess, the Individual Debtor's counsel reported to the Court that "the owner of the boat intends and is committed then instead to post cash equal to the cost of the boat, about $37 million." (*Id.* Ex. 10, at *86:21–23.)

21. The Individual Debtor, PAX, the Committee, and creditors Rui Ma and Zheng Wu later reached an agreement to resolve the Stay Relief Motion, as reflected in the Stipulated Delivery Order. (Main Case ECF No. 299.)

22. Under the Stipulated Delivery Order, HK USA was required to return the Lady May to Connecticut, with the performance of this obligation secured by the deposit of $37 million into

escrow by HK USA, to be released back to HK USA only through the certification process. (Stipulated Delivery Order ¶ 5(i).)

23. The proposed stipulation regarding the Lady May was announced to the Court during a hearing held on April 27, 2022, (Main Case ECF No. 318, at 97:4–103:15), and memorialized in a proposed stipulated order submitted to the Court on April 29, 2022, (Main Case ECF No. 294).

24. On April 29, 2022, the Court approved the proposed stipulated order and entered the Stipulated Delivery Order. (ECF No. 299.)

25. The Stipulated Delivery Order was entered while both (a) UST's motion seeking appointment of an examiner or Chapter 11 trustee in the Individual Debtor's case, (Main Case ECF No. 102); and (b) PAX's motion to dismiss the Individual Debtor's Chapter 11 case (Main Case ECF No. 183), were pending.

26. The terms of the Stipulated Delivery Order only expressly contemplate the possibility that the Individual Debtor's Chapter 11 case would be dismissed, not the possibility that a Chapter 11 trustee would be appointed. (Stipulated Delivery Order ¶ 9.)

27. To date, the Escrowed Funds remain either (i) in escrow at U.S. Bank N.A. pursuant to an escrow agreement between HK USA, the Committee, and U.S. Bank, as originally contemplated by the Stipulated Delivery Order, (Bassett Decl. ¶ 2); or (ii) in the repair reserve held in escrow by the Trustee pursuant to a consent order, (ECF No. 930).

## V. DISCUSSION

In addition to seeking relief pursuant to 11 U.S.C. § 544, the Second Counterclaim also seeks relief pursuant to sections 541 and 542 of the Bankruptcy Code. Section 541 states in pertinent part that

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (1) Except as provided in subsections (b) and (c)(2) of this section, all legal and equitable interests of the debtor in property as of the commencement of the case.

Section 542(a) states

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession custody or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The Second Counterclaim alleges that HK USA is the alter ego of the Individual Debtor. The Trustee argues that HK USA's property, including without limitation the Lady May and the Escrowed Funds, is property of the Individual Debtor's Estate pursuant to section 541, and the HK Parties must deliver HK USA's property to the Trustee pursuant to section 542. (ECF No. 36 ¶¶ 112–19.) The Trustee argues that he is entitled to summary judgment as a matter of law that HK USA is the alter ego of the Individual Debtor and that he is entitled to the attendant relief. HK USA objects to the Motion for Summary Judgment. Ms. Guo has not objected.

### a. Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), made applicable in the instant adversary proceeding by Fed. R. Bankr. P. 7056, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," a movant is not required to "support

its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

**b. Alter Ego Standard**

Unless there is an overriding federal policy interest, bankruptcy courts apply forum state choice-of-law rules to issues of state law. *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). Under Connecticut law, "[t]he law of the governing jurisdiction of a foreign limited liability company governs: (1) The internal affairs of the company; (2) the liability of a member as member and a manager as manager for a debt, obligation or other liability of the company; and (3) the liability of a series of the company." Conn. Gen. Stat. § 34-275(a). Based on a predecessor statute, the Connecticut Supreme Court has ruled that the state of formation of a foreign limited liability company governs the issue of veil-piercing. *Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007).

Moreover, Federal courts apply the same rule. *Hyundai-Wia Machine Am. Corp. v. Rouette (In re Rouette)*, 564 B.R. 157, 174 (Bankr. D. Conn. 2017). It is undisputed that HK USA is a Delaware limited liability company. Therefore, Delaware law governs the issue of whether HK USA is the alter ego of the Individual Debtor.

"Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n. 4 (D. Del. 2018). Under Delaware law, alter ego or piercing the corporate veil has two elements: (i) the corporate entity who is to be made liable for the debts of its alter ego is under the dominion and control of said alter ego such that it is a mere instrumentality rather than a separate economic entity and (ii) an overall element of fraud or injustice is caused by the corporate structure. *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968) (Piercing the corporate veil "may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved."); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("[P]iercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'") (internal citations omitted); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992) ("[A] court can pierce the corporate veil of an entity where there is fraud or where a subsidiary is in fact a mere instrumentality or alter ego of its owner.") (internal citations omitted); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1457 (2d Cir. 1995) ("To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness . . . [is] present.'") (internal citations

omitted); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying Delaware law).

Delaware law allows outsider reverse veil-piercing – piercing the veil of a downstream entity for the benefit of the creditors of an upstream entity or individual, *e.g.*, piercing the veil between a subsidiary and its parent for the benefit of its parent's creditors – upon consideration of "the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim" as well as additional factors reflecting the concern that creditors and other stakeholders of the downstream entity might have their legitimate expectations thwarted. *Manichaean Capital,* 251 A.3d at 714–15. Although *Manichaean Capital* appears to be the first reported decision of a Delaware court recognizing reverse veil-piercing, the United States District Court for the District of Connecticut correctly anticipated that Delaware courts would allow reverse veil-piercing. *Universitas Educ., LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794 (D. Conn. Mar. 15, 2021).

The traditional factors to support a finding of alter ego and/or piercing the corporate veil are:

> "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." While these factors are useful, any single one of them is not determinative. An ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to "an overall element of injustice or unfairness."

*Id.* at 706–07 (internal citations omitted). The first five factors are relevant towards the element of dominion and control. The additional reverse-piercing factors are:

> "(1) the degree to which allowing a reverse pierce would impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct of the insider that gave rise to the reverse pierce claim, and the degree to which allowing a reverse pierce would establish a precedent troubling to shareholders generally;

> (2) the degree to which the corporate entity whose disregard is sought has exercised dominion and control over the insider who is subject to the claim by the party seeking a reverse pierce; (3) the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider, or to that person's reasonable reliance upon a lack of separate entity status between the insider and the corporate entity; (4) the degree to which the public convenience, as articulated by [the Delaware General Corporation Law and Delaware's common law], would be served by allowing a reverse pierce; (5) the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider; (6) the possibility that the person seeking the reverse pierce is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief"; (7) the extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach; and (8) the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt.

*Id.* at 715 (internal citations omitted).

**c. HK USA is the Individual Debtor's alter ego**

The Trustee argues he has established that the Individual Debtor has asserted dominion and control over HK USA pursuant to the factors Delaware courts consider because: (a) pursuant to the Amended Collateral Estoppel SJ Order, the Court has held that the Individual Debtor beneficially owned and controlled all of the assets HK USA has ever purportedly owned, namely, the Lady May and Lady May II; (b) it is undisputed and admitted by the HK Parties that during the entire time period relevant to the Second Counterclaim, HK USA has (i) generated no revenue; (ii) had no directors, officers, or employees; (iii) not filed tax returns; (iv) had no bank account and had not otherwise been capitalized; and (v) maintained no documents other than those relating to the Lady May; and (c) it is undisputed that HK USA had no business purpose other than owning the Lady May and Lady May II. Regarding the fraud or injustice factor, the Trustee argues that HK USA's corporate form serves to judgment-proof the Lady May.

HK USA advances three counter arguments. First, it argues that HK USA also served a business purpose for Ms. Guo – not just her father—because (i) Ms. Guo signed contracts regarding the operations of the Lady May; and (ii) she personally guaranteed a loan to HK USA.

Second, HK USA argues that Ms. Guo did not intend fraud in creating HK USA, but rather sought to create an American entity to own the Lady May. Third, it argues that, while the factors may support finding Ms. Guo is the alter ego of HK USA, the Trustee is seeking to skip the step of establishing the Individual Debtor's ownership interest in HK USA, which is the relief the Trustee seeks in the Third Counterclaim. HK USA argues that the Trustee must first prevail on the Third Counterclaim before relief may be granted on the Second Counterclaim.

***The Individual Debtor asserts 'dominion and control' over HK USA***

The traditional alter ego factors support a finding that the Individual Debtor has dominion and control over HK USA. *See Manichaean Capital,* 251 A.3d at 714 (listing traditional alter ego factors). First, it is undisputed that HK USA was undercapitalized and could not pay for the operation and maintenance of the Lady May. By HK USA's own admissions, the operation and maintenance of the Lady May costs more than $100,000 a month. (Undisputed Fact 8.) Yet HK USA, again by its own admissions, has no income, generates no income, and has no liquid assets. (Undisputed Fact 7.)

Second, it is undisputed that HK USA does not observe corporate formalities. HK USA admits that it has no directors, officers, or employees. (Undisputed Fact 7.) In addition, HK USA admits it did not maintain a corporate bank account despite having its own expenses. (*Id.*)

Third, HK USA is a mere instrumentality of the Individual Debtor. HK USA's only business is the ownership, operation, and maintenance of the Lady May and Lady May II. (Undisputed Facts 7, 9, 12.) The Court adopts its conclusion in the Amended Collateral Estoppel SJ Order that the Individual Debtor beneficially owns and controls the Lady May and the Lady May II.[7] Taken together, the Trustee has established that HK USA's only business purpose is

---

[7] *See* note 5, *supra.*

nominal ownership, operation, and maintenance of assets the Individual Debtor beneficially owns and controls. This alone establishes that HK USA is a mere instrumentality of the Individual Debtor. *See Fletcher*, 68 F.3d at 1457; *Geyer*, 621 A.2d at 793.

Beyond the application of collateral estoppel, the record of this case supports the conclusion that the Individual Debtor beneficially owns and controls the Lady May and Lady May II. Among other things, Ms. Guo affirmed the testimony of former captains and managers of the Lady May who stated that overwhelmingly the Individual Debtor – not Ms. Guo – had the benefit of use of the Lady May. (Reply Ex. 2, at *92:8–107:17.) Moreover, Undisputed Facts 17 through 22 detail how HK USA's efforts in the early days of this case all benefited the Individual Debtor – not Ms. Guo. Furthermore, Undisputed Fact 5 provides additional evidence that HK USA is a mere instrumentality of the Individual Debtor. For example, HK USA shares or shared office space with, *inter alia*: (i) the Individual Debtor's counsel in these cases and in other cases (Main Case ECF No 530; Bassett Decl. Ex. 6); (ii) a family office purportedly controlled by the Individual Debtor's son that has historically paid many of the Individual Debtor's expenses, including in relation to these cases, and has procured counsel for the Individual Debtor (Main Case ECF Nos. 117, 197, 318, at 146:25–149:5; *Pac. All. Asia Opportunity Fund, L.P. v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn.) (Nov. 30, 2022) (hereinafter "PI Adversary"), ECF No. 94, at 2:24–5:10); (iii) a property holding company purportedly controlled by the Individual Debtor's wife, which owns the Greenwich mansion where the Debtor resides (Main Case ECF Nos. 81 and 1015); and (iv) entities involved in the Individual Debtor's media and cryptocurrency business (*see* Corrected Memorandum of Decision ¶¶ 3, 7, PI Adversary (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133). Moreover, the

Individual Debtor himself listed HK USA's address as his address on his Chapter 11 petition. (Main Case ECF No. 1, Part 1 § 5)

HK USA has not established the existence of any disputed or undisputed material fact supporting its contention that HK USA has an additional business purpose. HK USA identifies documents signed by Ms. Guo on its behalf. Each such document, however, relates to the operation of the Lady May – which the Court has concluded was under the Individual Debtor's control. (Undisputed Facts 13–14, 17–23.) Therefore, HK USA has identified no genuine issue of material fact about whether it is a mere instrumentality of the Individual Debtor.

As to the remaining two factors, there is no allegation that funds have been drained from HK USA. In fact, HK USA admits that it has never had a bank account. (Undisputed Fact 7.) Finally, it is unclear whether HK USA is either cash-flow or balance-sheet insolvent. As to cash-flow insolvency, the parties disagree about whether a funding agreement with Lamp Capital LLC is enforceable. (Main Case ECF Nos. 1216, 1490; *see* Main Case ECF No. 1550, at 101:4–108:13.) As to balance-sheet insolvency, the parties disagree about whether the Escrowed Funds are a liability or an asset. Moreover, the value of the Lady May and Lady May II is presently unknown. HK USA's positions on these issues would tend to establish insolvency.

Nevertheless, an alter ego determination does not rely on the presence of all enumerated factors. *Manichaean Capital*, 251 A.3d at 714. Here, three of the five are present. While assertions of dominion and control tend to be fact-heavy questions ill-suited for summary judgment, this is a case where two of the five domination factors are established on *admitted* facts. Moreover, HK USA fails to point to any material facts, disputed or otherwise, that establish HK USA had any business other than ownership and operation of the Lady May and Lady May II, which business has already been established in this Court to be the Individual

Debtor's business. The Court concludes that there is no genuine issue of material fact and that as a matter of law the Individual Debtor dominates and controls HK USA.

***HK USA's corporate form causes 'fraud or similar injustice'***

Turing to the second element of the alter ego claim, the Court must address whether HK USA's corporate form causes some fraud or similar injustice. To establish this element, the Trustee does not need to prove fraud. *Fletcher*, 68 F.3d at 1457.

Here, there is closely held corporation – HK USA. HK USA only exists to hold assets – the Lady May and Lady May II. HK USA is held in the name of Ms. Guo, a relative of the person who beneficially owns and controls those assets – the Individual Debtor. In the fraudulent transfer context, each of these facts is considered a badge of fraud. *Salomon ex rel. Kaiser v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983). The Court concludes that in the alter ego context, they are indicia of injustice wrought by the corporate form. These badges of fraud highlight that HK USA's purpose is to prevent the Individual Debtor's creditors from executing a judgment entered against the Individual Debtor upon the Lady May and Lady May II and support the inference that it was the Individual Debtor's intent to do so. *See Manichaean Capital*, 251 A.3d at 708–09. As noted above, HK USA's *only* purpose is to be the registered owner of the Lady May and Lady May II. Therefore, no additional business purpose has been established to complicate this analysis.

While the HK Parties argue that Ms. Guo did not intend this injustice when creating HK USA, it is irrelevant whether she did or did not. The fraud or similar injustice element is about the *result* of the corporate form – not the intent at its formation. *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) ("Finally, we note that the plaintiff need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove

that it was so used.") (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913) (discussing cases where original fraudulent intent was held unnecessary).

***Delaware law does not require a direct corporate relationship***

HK USA argues that the preceding analysis skips a step and makes an impermissible inference of equitable ownership before the Third Counterclaim has been decided in the Trustee's favor. The Court disagrees. The Trustee has established, at the very least, an indirect relationship between HK USA and the Individual Debtor. HK USA is the record owner of property that the Individual Debtor beneficially owns and controls. The record owner of HK USA is undisputedly his daughter, Ms. Guo. For alter ego purposes, it is not necessary under Delaware law to break down the intermediate barriers presented by an indirect relationship: while a typical alter ego case holds a parent liable for the debts of its subsidiary, a parent-subsidiary or other direct relationship is not an element of alter ego. *See Official Comm. of Unsecured Creditors v. Reliance Capital Grp., Inc. (In re Buckhead Am. Corp.)*, 178 B.R. 956, 974–75 (D. Del. 1994) (concluding that a direct parent-subsidiary relationship is not needed under Delaware law where the two alter ego elements are present); *Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 556–58 (Bankr. D. Del. 2022) (same); *Official Comm. of Unsecured Creditors v. Highland Capital Mgmt. L.P. (In re Moll Indus. Inc.)*, 454 B.R. 574, 587 (Bankr. D. Del. 2011) (same). These cases hold that the elements of alter ego are 'dominion and control' and 'fraud or injustice,' even where there is not a direct relationship and intermediate corporate veils have not been pierced – or in the case of enterprise liability, *do not even exist*. *See Maxus Energy*, 641 B.R. at 557–558 (quoting *Brotherhood of Locomotive Engineers v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 29 (1st Cir. 2000) discussing alter ego in non-traditional contexts, such as with "sibling" corporations).

This principle extends to the allegations in the Second Counterclaim. The purpose of alter ego is to prevent the corporate form from protecting the party actually responsible for an abuse of that form. *See Official Comm. of Unsecured Creditors v. Morgan Stanley & Co., Inc. (In re Sunbeam Corp.)*, 284 B.R. 355, 365 (Bankr. S.D.N.Y. 2002) (applying Delaware law). This accords with New York law. *See Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (holding that under New York law, equitable ownership may be established "for veil-piercing purposes" by establishing "considerable authority over [the corporation] . . . to the point of completely disregarding the corporate form and acting as though [its] assets were his alone to manage and distribute'") (internal citations omitted). While at first blush *Freeman* may seem to support HK USA's position, it does not. As *Freeman* articulates it, the proof for "equitable ownership for veil-piercing purposes" under New York law is *dominion and control*. This accords with the cases, *supra*, stating that, under Delaware law, an established direct corporate relationship – or, alternatively, veil-piercing of each intermediary – is not necessary.

It is important to note the distinction between the Second and Third Counterclaims. Alter ego and/or piercing the corporate veil as sought by the Second Counterclaim renders one entity liable for the debts of another individual or entity. *Tronox*, 549 B.R. at 44 ("Under Delaware law, veil piercing is a doctrine of equity. . . . Veil piercing is thus not a purely independent cause of action. Instead, piercing the corporate veil effectively amounts to the imposition of joint and several liability between a direct actor and its corporate affiliate for some underlying wrong committed by the direct actor.") In conjunction with sections 541 and 542, alter ego thus accomplishes the transfer of assets into the bankruptcy estate.

While beneficial ownership of *personalty or realty* in conjunction with sections 541 and 542 also accomplishes transfer of an asset into the bankruptcy estate, beneficial ownership of a

*limited liability company* as sought by the Third Counterclaim does not alone accomplish this – it accomplishes the transfer of the *membership interest* into the bankruptcy estate. *See, e.g.*, *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 574 (Bankr. N.D. Ill. 2021) ("For all of these reasons, the Court finds and holds that the Trustee has met his burden of establishing that Debtor is the true equitable owner of Jorgovanka's *50% membership interest* in PHMX LLC and is entitled to exercise the rights accorded to him by that status. Judgment is entered in favor of the Trustee and against Jorgovanka under Counts I and II of the complaint.") (emphasis added), *aff'd by* 20 b 9807, 21 C5328, 2022 WL 19638995 (N.D. Ill. July 25, 2022), *aff'd by* No. 22-2500, 2023 WL 3113706 (5th Cir. April 27, 2023). If only beneficial ownership of HK USA is established as sought in the Third Counterclaim, the bankruptcy estate would not include the *assets* of the limited liability company – the corporate veil would have to be pierced. If the Trustee were to succeed on the Third Counterclaim without succeeding on the Second Counterclaim, he would *control* HK USA because he would be the owner of the membership interest in HK USA. However, he would not own HK USA's assets and would have to respect its corporate form, absent a subsequent judgment as to some or all of HK USA's assets.

***Additional reverse-piercing factors support piercing corporate veil***

The Court must also consider the additional factors in *Manichaean Capital* regarding reverse veil-piercing. 251 A.3d at 715. While the parties did not directly address these factors in their pleadings or during oral argument, the parties did raise issues that are relevant to reverse veil-piercing. Analyzing the additional factors in light of the issues raised by the parties, the Court concludes that the applicable additional reverse veil-piercing factors also support a finding of alter ego.

First, reverse veil-piercing will not harm the legitimate expectations of HK USA's owners. Ms. Guo is the sole member of HK USA. Ms. Guo has no expectation of use or control of the Lady May or Lady May II. The Court has concluded that the Individual Debtor beneficially owns and controls the Lady May and Lady May II. Ms. Guo testified that prior testimony of the Lady May's former captains and managers stating that she did not personally direct the Lady May and that she did not frequently use the Lady May – in comparison to her father, who did – was accurate. (Reply Ex. 2, at *92:8–107:17.) As to the Lady May II, Ms. Guo testified under penalty of perjury that neither she nor HK USA owned the Lady May II. (Undisputed Fact 9.) Ms. Guo can also have no legitimate expectation to use the Escrowed Funds because (i) the funds are in escrow pending further order of the Court; and (ii) the funds were received as a loan, which Ms. Guo allegedly personally guaranteed.

Regarding the Personal Guarantee, Ms. Guo knew or should have known that she was guaranteeing a loan to an entity whose only purported asset at that time was (a) subject to an ownership dispute; (b) already found by one court to be beneficially owned and controlled by the Individual Debtor; (c) previously held away from the jurisdictional waters of New York despite court order and might well similarly avoid the jurisdictional waters of Connecticut despite the Stipulated Delivery Order; and (d) intended to be transferred to the Individual Debtor's Estate and sold for the benefit of the Individual Debtor's creditors, which is particularly concerning because HK USA admittedly has no source of revenue from which to pay any interest that accrued on the loan. If Ms. Guo is liable on the Personal Guarantee – which is not clear since the Personal Guarantee is undated, unwitnessed, and unnotarized – she may have a claim against the Individual Debtor's Estate.

Second, reverse veil-piercing will also not harm the legitimate expectations of HK USA's creditors. The Court has already allowed payment of the operation, maintenance, and management expenses of the Lady May. Himalaya International Financial Group Ltd. ("Himalaya Financial"), much like Ms. Guo, knew or should have known the loan was risky for the reasons discussed in the preceding paragraph.

Third, reverse veil-piercing will allow recovery to the Individual Debtor's creditors where otherwise it remains uncertain. At this point, claims in aggregate of several hundred million – or perhaps billions of dollars – have been alleged against the Individual Debtor's Estate through proofs of claim, which are prima facie evidence of their validity. The Individual Debtor has asserted less than $4,000 in assets and has not been cooperating in the Trustee's investigation of assets.

Fourth, reverse veil-piercing would be in the public interest because, as noted above, HK USA's corporate form works an injustice. HK USA has no business purpose other than holding assets – none of the policy considerations supporting limited liability are applicable. There is no going concern to protect. HK USA only serves to shield assets beneficially owned and controlled by the Individual Debtor from the Individual Debtor's creditors.

For these reasons, there is no genuine dispute of material fact and that the Trustee is entitled to judgment as a matter of law that HK USA is the alter ego of the Individual Debtor.

**d. The Trustee is not bound by the Stipulated Delivery Order**

HK USA raises an equitable defense[8] against the Second Counterclaim arguing that the Trustee is estopped from recovering the Escrowed Funds by the provisions of the Stipulated

[8] Under *Celotex*, where a non-moving party bears the burden of proof such as HK USA with respect to the present equitable defense, the movant must make an initial "showing" regarding the claim, element, or defense. 477 U.S. at 322–23. The burden is not shifted to the movant and

Delivery Order. The Stipulated Delivery Order provides in pertinent part that the Individual Debtor (among others)

> shall not take any act to assert, create, perfect or enforce any right, title, lien or other interest in the [Escrowed Funds] while in the possession of the Escrow Agent or their proceeds while in the possession of HK USA or any other person, including, but not limited to, through the enforcement of any judgment or service of any prejudgment remedy or other legal process

(ECF No. 299 ¶ 12.) HK USA argues that the Trustee is bound by the Stipulated Delivery Order and, in particular, paragraph 12, because he stepped into the shoes of the Individual Debtor upon his appointment.

The Trustee argues that he is not bound by the Stipulated Delivery Order. First, the Trustee argues that it is black letter contract law that a party cannot enter a contract with itself and, therefore, the Stipulated Delivery Order – as between the Individual Debtor and HK USA – is null and void *ab initio*. Furthermore, the Trustee argues that he is not estopped from arguing that he is not bound by the Stipulated Delivery for several reasons, namely: (i) neither of the HK Parties are creditors in these cases; (ii) there is no public policy interest in allowing a debtor to self-deal in bankruptcy to shield assets from bankruptcy proceedings and no prejudice against a debtor in preventing such self-dealing; (iii) there is a public policy interest in allowing a Chapter 11 trustee to investigate a debtor's alleged efforts to hide assets and recover where a claim is meritorious; and (iv) the Stipulated Delivery Order was silent on its effect on a Chapter 11 trustee despite the pendency of the UST's motion for the appointment of a Chapter 11 trustee.

---

rather remains with the non-movant, in this case HK USA. *Id.* HK USA rested on its arguments made regarding the Motion to Dismiss.

***Stipulated Deliver Order is null and void as between the Individual Debtor and HK USA***

The Court first considers the Trustee's argument sounding in contract. The Trustee is correct that contract law applies to the Stipulated Delivery Order. *Equal Emp. Opportunity Comm'n v. N.Y. Times Co.*, 196 F.3d 72 (2d Cir. 1999) ("Although consent decrees are judicial orders, they are also agreements between parties that 'should be construed basically as contracts.'") (internal citations omitted); *see Doe v. Pataki*, 481 F.3d 69, 73 n. 3 (2d Cir. 2007) ("As the District Court correctly noted, the Stipulation was the equivalent of a consent decree . . .."); *see also Vincent's of Mott Street, Inc. v. Quadami, Inc.*, 423 F. App'x 46 (2d Cir. 2011) (treating a stipulation approved by bankruptcy court as a contract). This Court applies Connecticut choice of law rules to questions of state law. *Thelen LLP*, 736 F.3d at 219. Connecticut applies the Second Restatement for choice of law determinations in actions on contracts. *Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 256-57 (Conn. 2006); *see* Restatement (Second) of Conflict of Laws §§ 6, 186–188 (2022). The Stipulated Delivery Order does not contain a choice of law provision. Therefore, the Court applies Connecticut law as the contract was formed in this Court, which is in Connecticut.

Under Connecticut law, contract formation requires, *inter alia*, a meeting of the minds such that a mutual understanding of the terms is achieved between the parties. *L & R Realty v. Conn. Nat'l Bank*, 732 A.2d 181, 188–89 (Conn. App. Ct. 1999), *cert. denied*, 734 A.2d 984 (Conn. 1999). "If the minds of the parties have not truly met, no enforceable contract exists." *L & R Realty*, 732 A.2d at 188–89. Therefore, a party cannot prosecute an action on a contract where it contracted with itself – although some other beneficiary to the contract may. *Moore v. Denslow*, 14 Conn. 235, 237–38 (1841); *accord Animazing Ent., Inc. v. Louis Lofredo Assocs., Inc.*, 88 F. Supp. 2d 265, 270–71 (S.D.N.Y. 2000) (stating that under New York law it is well-

established that there must be (at least) two parties to a contract – otherwise it is void). Because the Court has concluded that HK USA is the alter ego of the Individual Debtor, the Court concludes that as between HK USA and the Individual Debtor – into whose shoes the Trustee steps, in this regard – the Stipulated Delivery Order was void *ab initio*. Therefore, HK USA may not enforce the Stipulated Delivery Order against the Trustee and the Trustee may recover the Escrowed Funds.

***The Trustee is not estopped from recovering the Escrowed Funds***

As to whether the Trustee is estopped from recovering the Escrowed Funds, in *Feldman v. Trans-East Air, Inc.*, a case under the former Bankruptcy Act, the Second Circuit held that a trustee was bound by the former debtor-in-possession's rejection of airplane leases because

> In this case appellees changed their position in reasonable reliance on the rejection of the contracts. They properly understood the order of September 8 to require them to take the planes and to attempt to mitigate damages by finding a new lessee. However, demand for the aircraft was very low. As the district court found, appellees expended considerable amounts of money, time, and effort to re-lease the planes, and these efforts plus appellees' expertise were largely responsible for the favorable leases eventually obtained.
>
> Appellees had a right to rely on the order of disaffirmance. The debtor requested it, the court approved it, and no other party opposed it. For sixteen months neither the debtor nor the trustee objected to appellees' actions.

497 F.2d 352, 355 (2d Cir. 1974). The Second Circuit noted there was no allegation of "fraud or bad faith by any party." *Feldman*, 497 F.2d at 356. Similarly, in *E. Air Lines, Inc. v. Ins. Co. (In re Ionoshpere Clubs)*, the Second Circuit held that a Chapter 11 trustee was bound by a debtor-in-possession's obligations under an insurance plan where

> Promising to perform its obligations under the Plan with only the payment schedule altered, and remaining silent as to the contentions advanced in this litigation that it had not adequately given its consent to the 1.6 multiplier provided by the Plan, that that multiplier was unenforceable, and hence that its maximum premium should be less than the amount called for by the Plan, [the debtor] persuaded [the insurer] to agree to a relaxed premium payment schedule and to continue to provide insurance coverage.

85 F.3d 992, 1001 (2d Cir. 1996). The Second Circuit also noted, *inter alia*, that the debtor made "no effort whatever to alter the formula for computing the maximum premium; according to McGuinness, that question was not even discussed" and that allowing the trustee to alter the insurance plan would cause the insurer "substantial prejudice." *Ionosphere*, 85 F.3d at 1001.

Second Circuit jurisprudence is in accord with the law of its sister circuits. In *Armstrong v. Norwest Bank, Minneapolis, N.A.*, the Eighth Circuit expressed concern that "Creditors must be able to deal freely with debtors-in-possession, within the confines of the bankruptcy laws, without fear of retribution or reversal at the hands of a later appointed trustee." 964 F.2d 797, 801 (8th Cir. 1992) (not allowing a Chapter 7 trustee to undo a stipulation between a former debtor-in-possession and a creditor regarding the use of cash collateral). In *In re Superior Toy & Mfg. Co., Inc.*, the Seventh Circuit did not allow a Chapter 7 trustee to reconsider a previous assumption of a contract in Chapter 11 and pursue preference litigation on the cure payments involved in the assumption of the contract where there was not "[f]raud by a party, or the intentional concealing of information from the court so as to improperly obtain an assumption order" because the estate benefitted from the assumption and reconsideration now would prejudice the creditor. 78 F.3d 1169, 1173–76 (7th Cir. 1996). In *Seidle v. GATX Leasing Corp.*, the Eleventh Circuit held that a Chapter 11 trustee could not seek to recover alleged preference payments to a creditor where the former debtor-in-possession had entered into a stipulation with the creditor pursuant to 11 U.S.C. § 1110 noting that it had previously determined "'equity demands that GATX not suffer a penalty for having voluntarily entered into a post-petition section 1110 agreement with Airlift.'" 778 F.2d 659, 663–66 (11th Cir. 1985) (internal citations omitted).

Ultimately, in determining the equities, the Court must weigh the public's interest in appointing and allowing a Chapter 11 trustee to perform statutory duties against the policy concerns that favor binding a trustee to the bargain of a former debtor-in-possession. *Begier v. Am. Express, Inc. (In re Am. Int'l Airways, Inc.)*, 74 B.R. 691, 694 (Bankr. E.D. Penn. 1987). As set forth below, the Court agrees with the Trustee that on the specific facts and circumstances of these Chapter 11 cases, the public's interest in the Trustee performing his duties outweighs those policy concerns.

While the HK Parties are correct that generally a trustee will be bound by a bargain made by a former debtor-in-possession, the policy concerns militating this general result do not support binding the Trustee to the terms of the Stipulated Delivery Order. Unlike in *Armstrong*, *Superior Toy*, and *Seidle*, it is undisputed that neither HK USA nor Ms. Guo is a creditor of the Individual Debtor.[9] Therefore, the policy concern that creditors must be comfortable in reaching agreements with debtors-in-possession is not implicated on the instant facts. *See, e.g.*, *Armstrong*, 964 F.2d at 801. Furthermore, because the Court has found HK USA is a mere instrumentality of the Individual Debtor with no separate economic existence, there can be no prejudice to HK USA in holding it liable for the debts of the Individual Debtor. *See, e.g.*, *Ionosphere*, 85 F.3d at 1001; *Superior Toy*, 78 F.3d at 1176; *Seidle*, 778 F.2d at 665; *Feldman*, 497 F.2d at 355. Further still, there is no public interest in allowing an Individual Debtor to self-deal in bankruptcy to shield assets from bankruptcy proceedings, which would be accomplished by binding the Trustee to the Stipulated Delivery Order. *See In re Alma Energy, LLC,* No. CIV. 10-80-ART, 2010 WL 4736905 (E.D. Ky. Nov. 16, 2010); *Coan v. Licata (In re First Conn.*

[9] While HK USA points to the fact that certain creditors were parties to the Stipulated Delivery Order, the Trustee is not seeking relief against such creditors.

*Consulting Grp.)*, Case No. 02-50852 (JJT), Case No. 02-51167 (JJT), Adv. P. No. 09-05010 (JJT), 2023 WL 2746826 (Bankr. D. Conn. Mar. 31, 2023); *Coan v. Licata (In re First Conn. Consulting Grp.)*, Case No. 02-50852 (JJT), Case No. 02-51167 (JJT), Adv. P. No. 09-05010 (JJT), 2023 WL 2752489 (Bankr. D. Conn. Mar. 31, 2023). This is because such self-dealing and bankruptcy-proofing constitutes “fraud or bad faith.” *Feldman*, 497 F.2d at 356; *see Superior Toy*, 78 F.3d at 1175; *Am. Int’l Airways*, 74 B.R. at 694. Finally, unlike in *In re MatlinPatterson Global Opportunities Partners II L.P.*, the Stipulated Delivery Order here does not expressly bind the Trustee, despite (a) the pendency at that time of a motion to appoint a Chapter 11 trustee and (b) discussing dismissal in light of PAX’s then-pending motion to dismiss. 644 B.R. 418, 427–28 (Bankr. S.D.N.Y. 2022); *see In re Phila. Athletic Club, Inc.*, 17 B.R. 345, 347 (Bankr. E.D. Penn. 1982).

At the same time, the public’s interest underlying the appointment of the Trustee, on these facts and circumstances, is of utmost concern. The Trustee was appointed in this case for cause. *See* 11 U.S.C. § 1104(a)(1). Among other things, the Trustee was appointed to investigate allegations that the Individual Debtor is engaged in shell games to hinder, delay, and defraud his creditors. The Second Counterclaim represents the sort of claim the Trustee was appointed to pursue. Piercing the corporate veil “may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved.” *Pauley Petroleum*, 239 A.2d at 633. The Court has determined that HK USA’s corporate form does injustice in that it serves to shield assets beneficially owned and controlled by the Individual Debtor from his creditors. This injustice would be served by holding the Trustee to be bound by the Stipulated Delivery Order. The public interest supports the Trustee’s recovery from the Escrowed Funds.

Furthermore, the discussion above regarding the additional reverse veil-piercing factors reinforces this analysis of the equities.

The equitable analysis accords with the determination above that the Trustee is entitled to judgment as a matter of law on his argument sounding in contract that he may recover the Escrowed Funds. Accordingly, for both these reasons, the Court concludes that there is no genuine issue of material fact and the Trustee is entitled to judgment as a matter of law that he may recover the Escrowed Funds.

## VI. CONCLUSION AND ORDER

For the reasons stated above, no genuine issue of material fact exists as to whether HK USA is the alter ego of the Individual Debtor and the Trustee is entitled to judgment as a matter of law on this issue. Therefore, the Court concludes that HK USA's property is property of the Individual Debtor's Estate pursuant to 11 U.S.C. § 541, which property the HK Parties must deliver to the Trustee pursuant to 11 U.S.C. § 542.

The Court additionally concludes that HK USA may not enforce the Stipulated Delivery Order against the Trustee because it was null and void *ab initio* as between HK USA and the Individual Debtor because a party may not contract with itself. Alternatively, upon a consideration of the equities, the Court concludes that the Trustee is not bound by the Individual Debtor's bargain made while a debtor-in-possession. Therefore, in accordance with the Court's conclusion that HK USA is the alter ego of the Individual Debtor, the Trustee may recover the Escrowed Funds pursuant to 11 U.S.C. §§ 541 and 542.

HK USA's cross-motion to dissolve the PI/PJR is denied without prejudice. At this time, the Court's ruling on the First Counterclaim is on appeal. It is likely that this ruling on the Second Counterclaim will also be appealed. In addition, the Third and Fifth Counterclaims

survived the HK Parties' Motion to Dismiss. Finally, although the Trustee argues that the Fourth Counterclaim is not, at this time, properly before the Court, it has not been dismissed, and may be properly before this Court now or in the future.

Accordingly, it is hereby

**ORDERED:** The Motion for Summary Judgment is **GRANTED** as set forth herein. HK International Funds Investments (USA) Limited, LLC ("HK USA") is and was at all relevant times the alter ego of Mr. Ho Wan Kwok (the "Individual Debtor"); and it is further

**ORDERED:** All property of HK USA at all relevant times to the present, including the Lady May, the Lady May II, and the Escrowed Funds constituted and constitute, as applicable, property of the Individual Debtor's Chapter 11 estate (the "Estate"); and it is further

**ORDERED:** On or before June 2, 2023, Ms. Mei Guo, HK USA's sole member, and HK USA (together, the "HK Parties") shall deliver all property of HK USA to Mr. Luc A. Despins, not in his personal capacity but in his capacity as Chapter 11 trustee of the Estate (the "Trustee"); and it is further

**ORDERED:** The Trustee is authorized to take all actions necessary and appropriate to effectuate this Order; and it is further

**ORDERED:** This Order is effective immediately and no stay pursuant to Rule 7062 of the Federal Rules of Bankruptcy Procedure shall be effective. The Court hereby grants a waiver of any limitations set forth in Rule 7062 of the Federal Rules of Bankruptcy Procedure on the Trustee's ability to enforce this judgment upon its entry; and it is further

**ORDERED:** This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order; and it is further

**ORDERED:** HK USA's cross-motion to dissolve the PI/PJR is **DENIED** without prejudice.

Dated at Bridgeport, Connecticut this 18th day of May, 2023.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut